### (May 7, 1973)

■ MARGARET BROWN, Respondent, v. METROPOLITAN LIFE INSURANCE COMPANY, Appellant.— In an action brought by the beneficiary named in three life insurance policies to recover the principal sum payable thereunder upon the death of the insured, defendant appeals from a judgment of the Supreme Court, Kings County, entered May 22, 1972 in favor of plaintiff, upon a jury verdict of $28,000. Judgment reversed, on the law and in the exercise of discretion, and new trial granted in the interest of justice, with costs to abide the event. Plaintiff's deceased husband died of coronary heart disease on March 18, 1968. At the trial plaintiff introduced the three life insurance policies and

rested on her prima facie case. Annexed to each policy was the insured's application. The first application, dated August 4, 1966, was for a $1,000 policy and in it the insured stated he could not recall when he had last consulted a physician; that he had not ever received treatment, attention or advice from any physician for, or been told by any physician that he had, high blood pressure, chest pain or heart trouble; that he had no other physical defect or known impairment of health; and that during the past five years he had no diseases or ailments not revealed in his application which required treatment. The second application, dated February 15, 1967, was for a $5,000 policy and in it the insured answered " no " to the following questions: whether he had been examined, advised or treated by any physician in the past five years; had ever received treatment, attention or advice for or been told that he had high blood pressure, chest pain or heart trouble; had any physical defect or been aware of any impairment of health not revealed in the application; and, in the past six months, had ever taken any prescribed medication or been advised to restrict his diet or living habits. The third application, dated January 27, 1968, for a $22,000 policy, contained substantially the same representations as the second application. In addition, the insured listed his family physician as Dr. Morris Birnbaum of Brooklyn. Dr. Birnbaum was called as a witness by defendant and testified he saw the insured on April 20, 1966 (less than four months before the date of the first application), when the insured complained of having had pain in his left lower chest for two weeks. An examination showed the insured was overweight and that his blood pressure was up: 166 over 86. It was his clinical opinion that the insured had angina pectoris, which is a symptom of pain around the heart due to a deficiency in the circulation of the coronary vessels. He suggested a cardiogram, but the insured refused it. He prescribed peritrate tablets to help increase the circulation in the coronary arteries. In his opinion, the insured was not suffering from high blood pressure. He next saw the insured two days later, on April 22, 1966, when the insured said he felt much better and was doing fine. He put the insured on a diet at that time. He thereafter saw the insured four times, in April and May, 1966. He prescribed renesee tablets, a diuretic used in many circulatory conditions. This was discontinued when the later examinations showed the insured to be almost normal and feeling fine; and the insured was put on hydrodiuril, a reducing medication. The next and last time he saw the insured was on February 9, 1968, when he treated him for a cough and cold. Defendant also called its medical underwriter and claims evaluator, Dr. Charles H. Gray, who testified that, based upon the insured's history of chest pains, considered by the insured's doctor as angina pectoris and treated with peritrate, defendant would not have issued the policies at the standard rate, but would have required a $25 per $1,000 extra charge for seven years. This testimony was based upon a medical guide used by defendant in helping to determine whether or not a risk should be accepted or refused. Dr. Gray was instrumental in preparing and continuing the guide and had a copy with him during his testimony. Plaintiff called a Dr. Stephen Wagner, who testified that the medication given by Dr. Birnbaum is not generally consistent with treatment for angina. Peritrate is used to dilate arteries and is given generally for coronary disease where the arteries are not large enough to let the blood through. He said he had never personally examined the insured. He could not make a diagnosis of angina pectoris from an examination of Dr. Birnbaum's original records. The records were not sufficient to support such a diagnosis and he did not believe the insured had had it. We conclude that the record establishes misrepresentation by the insured with respect to his past medical history and treatment. Defendant, through the testimony of Dr.

Gray, offered some proof that knowledge of that history and treatment would have led to a refusal to write the policies, within the meaning of subdivision 2 of section 149 of the Insurance Law (*Tolar* v. *Metropolitan Life Ins. Co.*, 297 N. Y. 441). Dr. Gray alluded to the written guide used by defendant in determining whether to accept a particular risk for coverage, but it was not offered in evidence. We conclude that defendant, since it has the burden of proof on this key issue, should buttress the oral testimony with documentary evidence, if available. A new trial would present that opportunity (*Lindenbaum* v. *Equitable Life Assur. Soc. of U. S.*, 5 A D 2d 651). Rabin, P. J., Hopkins, Munder, Martuscello and Shapiro, JJ., concur.