NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PA, Plaintiff,

v.

MASON, PERRIN & KANOVSKY, et
al., Defendants.

Civ. A. No. 89–2196.

United States District Court,
District of Columbia.

April 22, 1991.

Myles J. Ambrose, Thomas G. Olp, Ross
& Hardies, Washington, D.C., for plaintiff
Nat. Union Fire Ins. Co. of Pittsburgh.

James L. O'Dea, O'Dea & Mason, Washington, D.C., for defendants Arthur D. Mason and Mason, Perrin & Kanovsky.

Richard P. Perrin, pro se.

Helen R. Kanovsky, pro se.

William James Bethune, Washington, D.C., Mark Butler Bierbower, Hunton & Williams, Richmond, Va., for defendant James F. McConnell.

Arnold Bruce Podgorsky, Gerst, Heffner, Carpenter & Podgorsky, Washington, D.C., for defendant Mary V. Harcar.

Mark S. Landman, Siff, Rosen & Parker, P.C., New York City, for third-party defendant First State Ins. Co.

Stephen P. Hoffman, Pomerantz, Levy, Haudek, Block & Grossman, New York City, for amicus Investors Boardwalk.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

Plaintiff National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), a Pennsylvania insurance underwriter, sues to cancel a lawyers' professional liability insurance policy it issued to a Washington, D.C. law firm in 1986 as having been procured by fraud.[1] National Union has moved for early summary judgment on its complaint, for purposes of ruling upon which the Court will deem the following facts to be sufficiently established by the present record.

### I.

The individual defendants, three securities lawyers, made one another's acquaintance in the 1970's, early in their careers, while working as associates at a prominent Washington, D.C., law firm. During the same period they also met a securities broker named John Galanis. Some time later the three attorneys, Arthur P. Mason, Richard P. Perrin, and Helen R. Kanovsky, left their original law firm to become the Washington branch office of a California law firm for which, in 1984, they acted as securities counsel in three of a series of real estate partnership securities offerings, known as the Madison offerings. John Galanis was a "promoter" of the Madison offerings within the meaning of the Securities Act of 1933, 15 U.S.C. §§ 77a–77bbb. The following year the defendants acted as securities counsel for nine additional real estate securities offerings, known as the Boardwalk Marketplace offerings, of which, once again, Galanis was a "promoter." Galanis had earlier disclosed to the defendant attorneys certain information about himself, including the fact that, in 1972, he had been the subject of an injunction obtained by the Securities and Exchange Commission in the U.S. District Court for the Southern District of New York.[2] As counsel of record for the Madison and Boardwalk Marketplace offerings defendants had both a legal and professional responsibility for assuring the accuracy of the required offering disclosures, and the qualifications of the offerors under state "blue sky" laws. Galanis' relationship to the ventures was not disclosed.

In January, 1986, the defendant attorneys departed the California firm to start their own firm under the name Mason, Perrin & Kanovsky ("Mason, Perrin"). A principal, if not the only client of the new Mason, Perrin firm was John Galanis. In preparation for commencing business as a partnership, Mason, Perrin applied to National Union for lawyers' professional liability insurance coverage for the firm and its individual attorneys. Question 14 on the National Union application form inquired:

Is any applicant aware of any circumstances which may result in any claim being made against the applicant, their (his) predecessors in business or any of the present or past partners? If so, give full particulars.

Helen Kanovsky, who filled out the application for the partnership, responded "No" to Question 14. On February 3, 1986, after the firm had paid the premium, National Union issued Mason, Perrin a one-year poli-

---

1. Subject matter jurisdiction of the case is thus conferred by 28 U.S.C. § 1332.

2. In 1973 Galanis pled guilty to several counts of a criminal indictment arising from the same operative facts. *United States v. Galanis*, 72 Cr. 884 (S.D.N.Y.1972).

cy providing it with some $10 million in coverage.

In July, 1986, approximately six months after the policy went into effect, various investors in the Madison and Boardwalk Marketplace partnerships filed a number of law suits, naming as defendants one or more members of the Mason, Perrin law firm, and alleging claims of securities fraud, civil RICO, malpractice and breach of fiduciary duty, all predicated on the investors' charge that the Madison and Boardwalk Marketplace securities offerings had failed to disclose John Galanis' role as a promoter for the offerings. Following service of the civil complaints filed against them by the several investors, Mason, Perrin and Kanovsky notified National Union and called upon it to provide them a defense. National Union accepted the notices of claims "under a full and complete reservation of rights" on the ground that the complaints appeared to fall within one or more of the policy's coverage exclusions. The investors' claims remain pending while this action proceeds to determine National Union's obligations under the policy.

In February, 1988, a New York State grand jury returned a 39–count indictment against Galanis, Arthur Mason, and Richard Perrin charging various felony offenses in connection with the Madison and the Boardwalk Marketplace limited partnerships. The following October, John Galanis pled guilty in New York state court to four counts of second degree grand larceny. In the course of his allocutions Galanis admitted his promoter status for the offerings, and stated that Mason and Perrin had conspired with him to conceal his name, background, and involvement with the offerings from prospective investors.[3]

On March 12, 1990, Perrin pled guilty to count three of the indictment charging him with making false statements to induce and promote the sale of securities. Three days later, on March 15, 1990, Mason pled guilty to count fourteen which charges him with tendering a false and misleading memorandum in connection with one of the Madison offerings.[4]

## II.

Plaintiff National Union advances several grounds to justify its refusal to acknowledge coverage for the claims pending against defendants, including the "prior knowledge" and "criminal and fraudulent acts" exclusions of its policy. It is clear to the Court, however, that all but one indisputably present some genuine issue of material fact which precludes summary judgment in advance of trial. Fed.R.Civ.P. 56(c). With respect to plaintiff's primary argument, namely, a possible prior adjudication as to the presence of a materially false statement in the Mason, Perrin application for a policy, the question is a closer one.

 New York choice-of-law rules apply, because this case was transferred here pursuant to 28 U.S.C. § 1404(a) from the U.S. District Court for the Southern District of New York. See Van Dusen v. Barrack, 376 U.S. 612 (1964). New York, it appears, would look to District of Columbia law as controlling on the question of whether there are sufficient grounds to rescind an insurance policy, the District of Columbia being the jurisdiction in which the policy was issued, the premiums paid, and the insured law firm organized and doing business. See Ethicon, Inc. v. Aetna Casualty and Surety Co., 688 F.Supp. 119, 123 (S.D. N.Y.1988); Steinbach v. Aetna Casualty and Surety Co., 81 A.D.2d 382, 440 N.Y. S.2d 637, 640 (1st Dept.1981).

 Under District of Columbia law, an applicant's affirmative false statement on a material matter in an application for insurance constitutes a sufficient ground for voiding the policy. Hill v. Prudential Ins. Co., 315 A.2d 146 (D.C.App.1974); Kavakos v. Equitable Life Assur. Society, 88

---

3. The counts returned against Mason and Perrin charged them with, among other things, conspiring with Galanis to conceal this information from both public investors and regulatory authorities.

4. Counts three and fourteen of the indictment charged felonies but the District Attorney accepted Perrin and Mason's pleas to lesser included misdemeanor offenses.

F.2d 762 (D.C.Cir.1936). An insurer seeking to cancel a policy must prove, by a "preponderance of clear and satisfactory evidence," *see Northwestern Mutual Life Ins. Co. v. West,* 68 F.2d 428, 430 (D.C.Cir. 1933), *cert. denied,* 292 U.S. 627, 54 S.Ct. 631, 78 L.Ed. 1482 (1934), that the statement was, in fact, false. It must also prove that the untrue statement was material, either by showing that it affected the insurer's risk of loss in issuing the policy, or that the statement was made with intent to deceive. D.C.Code Ann. § 35–414; *Skinner v. Aetna Life and Cas.,* 804 F.2d 148, 149 (D.C.Cir.1986).

■ National Union contends that Mason, Perrin's disavowal of any knowledge of reasons to anticipate claims against them in answer to Question 14 was false. The pendency of the claims alone would appear to supply sufficient evidence of "materiality;" in other words, National Union's risk of loss has already been substantially enlarged beyond its expectations at the time it issued the policy.

■ But defendants' state of mind at the time they answered Question 14 is arguably a controverted issue of fact unless, as National Union submits, the issue has been earlier resolved in its favor as a matter of law by the guilty pleas entered by two of the Mason, Perrin principals to criminal charges filed against them in New York. Plaintiff contends that the guilty pleas admitted the very conduct which did, in fact, give rise to the civil claims brought against defendants, and are *prima facie* evidence that the answer to Question 14 was false. The doctrine of collateral estoppel, plaintiff's argument continues, operates to preclude defendants from refuting it, thereby eliminating any factual dispute.

Title 28 U.S.C., Section 1738, declares that the records and judicial proceedings of any state court "shall have the same full faith and credit in every court within the United States ... as they have ... in the courts ... from which they were taken." The Supreme Court has interpreted this statute as requiring federal courts to apply the preclusion law of the state in which a judgment was rendered, *Marrese v. American Academy of Orthopedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985), *reh'g denied,* 471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985), and has also held that a guilty plea is a "judgment" within the meaning of 28 U.S.C. § 1738. *See Haring v. Prosise,* 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983). Accordingly, this Court must advert to New York law to ascertain what preclusive effect, if any, must be accorded defendants' New York state convictions for purposes of this case.

■ Under New York law, it appears, convictions after trial and convictions based on guilty pleas are given similar collateral estoppel effect where the requirements for invoking the doctrine are met.[5] *See e.g., Goodridge v. Harvey Group, Inc.,* 728 F.Supp. 275 (S.D.N.Y.1990); *United States v. Schneider,* 139 F.Supp. 826 (S.D.N.Y. 1956); *Gerney v. Tishman Construction Corp.,* 136 Misc.2d 1051, 518 N.Y.S.2d 564 (Sup.Ct.1987). But, because the consequences of collateral estoppel are so drastic, the requirements for its application are "strict." *Gramatan Home Investors Corp. v. Lopez,* 46 N.Y.2d 481, 414 N.Y. S.2d 308, 386 N.E.2d 1328 (1979).

The first of those requirements is an identity of issues between what was essentially determined by the prior judgment and what must be proven in the subsequent case. *See e.g., Kaufman v. Eli Lilly & Co.,* 65 N.Y.2d 449, 456, 492 N.Y.S.2d 584, 482 N.E.2d 63 (1985). In order to preclude them here, therefore, Mason's and Perrin's guilty pleas must be shown to have necessarily resolved the specific issue presented here, *viz,* whether the attorneys were, at the time they submitted the application for insurance, aware of circumstances that

---

**5.** In contrast, under District of Columbia law, which follows the *Restatement (Second) of Judgments,* guilty pleas are rarely, if ever given preclusive effect; rather, the D.C. courts treat guilty pleas as admissions which may be introduced as such at subsequent civil trials. *See e.g., In re Shillaire,* 549 A.2d 336 (D.C.1988); *Frost v. Hays,* 146 A.2d 907 (D.C.1958); *cf. Stagecrafters' Club, Inc. v. District of Columbia Division of American Legion,* 111 F.Supp. 127 (D.D.C.1953).

could lead to claims being brought against them.

Perrin pled guilty to engaging in an agreement and scheme to obtain money and profit through promises and representations as to the future which were beyond reasonable expectation and unwarranted by the circumstances, with the intent to promote the negotiation and purchase of securities, during the period from February 1984 to June 1986. Mason pled guilty to knowingly filing a false written instrument in connection with a private placement offering during the period from February 1984 to December 1984.

There are several reasons why there is no identity of issues between those necessarily resolved by the guilty pleas and the falsity of defendants' response to Question 14. Plaintiff asserts that the essential falsity of the offering memoranda was the fraudulent concealment of Galanis as a promoter, and that the suits filed by investors against Mason, Perrin and Kanovsky for legal malpractice and fraud allege these same actions. Possibly so, but the guilty pleas themselves which alone provide the basis, if any, for collaterally estopping defendants from litigating the falsity of their response to Question 14 contain no reference whatsoever to defendants' concealment of Galanis' role in the offerings.[6] Then, Mason's plea to count 14 of the indictment admits his illegal act committed with intent to defraud the State of New York, not private investors.

In addition to the absence of an unmistakable identity of issues between those necessarily resolved by the guilty pleas of Mason and Perrin and that presented in this case, other factors support a refusal to permit plaintiff to avail itself of the doctrine of collateral estoppel to end this case here. First, the New York courts have recognized that "[the doctrine of] collateral estoppel is based on general notions of fairness involving a practical inquiry into the realities of the litigation." *Halyalkar v. Board of Regents*, 72 N.Y.2d 261, 268,

532 N.Y.S.2d 85, 527 N.E.2d 1222 (1988). In this case, both defendants accepted the district attorney's offer to plead guilty to a single misdemeanor count in satisfaction of multiple felony charges that portended possible prison terms of many years, following protracted and costly trials. The misdemeanor pleas forestalled trials, ended the uncertainty, and exposed defendants to maximum penalties of one year's incarceration, not to mention increasing the likelihood that they would be permitted to retain their licenses to practice law. A "practical inquiry into the realities" thus suggests reasons for the defendants' pleas of guilty quite independent of a willingness to concede guilt in fact.

A second factor mitigating against granting the convictions preclusive effect is that several of the defendants, namely Helen Kanovsky, James McConnell, and the firm itself, never had a full and fair opportunity to litigate the criminal charges brought against Mason and Perrin. Among the prerequisites to an invocation of the doctrine of collateral estoppel is that the party against whom the doctrine is invoked have had a full and fair opportunity to litigate the issues. "[O]ne of the fundamental principles of our system of justice is that every person is entitled to a day in court." *Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 414 N.Y.S.2d 308, 386 N.E.2d 1328 (1979). *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552 (1979).

For the reasons stated, therefore, this Court finds that there exists a genuine issue of material fact as to defendants' actual knowledge in early 1986, namely whether defendants' response to Question 14 denying awareness of a basis for as yet unasserted claims against them was false, and that, therefore, summary judgment for plaintiff cannot be granted at this stage of the case.

It is, therefore, this 22nd day of April, 1991,

---

**6.** Additionally, Perrin's plea does not establish which of the private placement memoranda contained unreasonable promises. Several of

the offerings were not made until a full month after the application was completed and several weeks after the policy had gone into effect.

**20**

ORDERED, that plaintiff's motion for summary judgment is denied without prejudice; and it is

FURTHER ORDERED, that the case is set for a status/scheduling conference on May 16, 1991 at 9:30 a.m. for the purpose, *inter alia,* of scheduling further proceedings herein.