**CHICAGO INSURANCE COMPANY, Plaintiff,**

v.

**KREITZER & VOGELMAN, David M. Kreitzer, Donald H. Vogelman, Daniel W. Pariser and Pariser & Vogelman, Defendants.**

**No. 97 Civ. 8619(RWS).**

United States District Court, S.D. New York.

July 2, 2002.

As Amended July 17, 2002.

Steinberg & Cavaliere, White Plains, NY by Kevin F. Cavaliere, of counsel, for Plaintiff.

James E. Musurca, Kreitzer & Vogelman and David M. Kreitzer, c/o Babchik & Young, White Plains, NY, Donald H. Vogelman, New York City, Daniel Pariser, Pariser & Vogelman, New York City, for Defendant.

*OPINION*

SWEET, District Judge.

Plaintiff Chicago Insurance Company ("CIC") has moved for the second time, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment declaring the propriety of its rescission of several lawyers' professional responsibility policies (the "Policies"). It also moves to dismiss the claim of defendants Kreitzer & Vogelman ("K & V") and David M. Kreitzer ("Kreitzer") that CIC has waived its right to rescind the Policies. The defendants, in turn, have also moved a second time in support of their contention that

CIC waived its right to rescind the Policies.

The parties have failed to overcome the shortcomings pointed out in the first round of this dispute, and, for the following reasons, both motions are therefore denied.

### The Parties

CIC is a corporation organized and existing under the laws of Illinois, and has its principal place of business in the State of Illinois.

K & V was at all time relevant hereto a sole proprietorship law firm owned by defendant Kreitzer, with its offices in New York, New York.

Pariser & Vogelman is the successor firm to K & V, with its offices in New York, New York.

Kreitzer is a citizen of the State of New York, and was an attorney duly licensed to practice law in the State of New York until a three-year suspension, effective March 20, 1997.

Donald H. Vogelman ("Vogelman") is a citizen of the State of New York. At all times relevant to the instant action he was an attorney duly licensed to practice law in the State of New York, and until March 20, 1997 shared office space with Kreitzer and utilized the firm name of K & V. He is presently a principal in K & V.

Daniel M. Pariser ("Pariser") is a citizen of the State of New York. AT all times relevant to the instant action he was an attorney duly licensed to practice law in the State of New York. He is presently a principal in K & V.

### Facts and Prior Proceedings

The facts underlying this dispute were described in greater detail in *Chicago Ins. Co. v. Kreitzer & Vogelman,* 2000 WL 16949 (Jan. 5, 2000) (the "Opinion"), familiarity with which is presumed. Both parties have moved again in an attempt to address the shortcomings of their earlier motions.

### I. *Materiality of Defendants' Misrepresentation*

With regard to CIC's previous claim, the Opinion concluded that K & V and Kreitzer failed to disclose to CIC, in response to initial and renewal policy application inquiries, that Kreitzer was the subject of an attorney disciplinary proceeding and that numerous potential claims had been levied against them arising out of their handling of various client matters. *Id.* at *6. However, CIC failed to establish as a matter of law these misrepresentations were "material" because it did not "submit any proof of its underwriting practices other than an affidavit of the underwriter." *Id.* at *7. Further, "[i]t is well-settled that the conclusory affidavit of an underwriter is not sufficient, standing alone, to establish materiality as a matter of law, and supporting documentation such as underwriting manuals, rules or bulletins is typically required." *Id.* (citations omitted).

In response to the opinion, CIC has submitted the affidavit of Diane Fiel ("Fiel"), who served as a Product Line Director and later as Vice President of CIC from December 1994 and April 2000. During that time, she participated in the preparation of underwriting guidelines for CIC's lawyer's professional liability insurance program and supervised the underwriters of those policies. Fiel states that she "cannot recall a situation anywhere approaching the level of client neglect involved here and the corresponding nondisclosure of same." Fiel Aff. at 2. Further, she states that CIC would not have issued the policy had K & V disclosed the complaints against them. *Id.* Fiel also affirmed that CIC had no guidelines in place regarding the issue:

While I wish I could direct the Court to specific sections of the CIC underwriting guidelines ... for its lawyer's professional liability insurance program concerning the impact of reported incidents or potential claims, I cannot do so because there was nothing in those guidelines addressing that issue. Additionally, I know of no internal manuals or bulletins generated by CIC in that regard.

*Id.* at 3. Instead, Fiel stated that the impact of the report of those incidents would be "within the discretion" of the underwriting department. *Id.*

## II. *Whether CIC Waived Its Rights*

Several of defendants' theories regarding CIC's entitlement to rescind were rejected in the Opinion. *CIC*, 2000 WL 16949 at *8–*9. The Court concluded, however, that the defendants had expressed a viable theory of waiver or estoppel, but that there remained disputed issues of material fact. The defendants argued that CIC's delay in rescinding the Policies from Spring of 1997—when Kreitzer's suspension and a number of K & V's misrepresentations were brought to CIC's attention—until November of that year prevented CIC from rescinding. *Id.* at *10. However, "a material question of fact exists concerning the moving defendants' assertion that CIC either waived or is estopped from asserting its right to rescind the K & V policies." *Id.*

The defendants have not pressed the estoppel claim,[1] but argue that the following events constitute waiver.

On February 18, 1997, the Appellate Division ordered that Kreitzer be suspended for three years, effective March 20, 1997, due to Kreitzer's wholesale neglect of his clients' claims and his failure to prosecute matters on their behalf. This determination was a matter of public record, *In the Matter of David M. Kreitzer*, 229 A.D.2d 188, 653 N.Y.S.2d 572(1st Dep't 1997). Kreitzer then transferred all his interests in the law practice to Pariser and Vogelman.

On March 14, 1997, Pariser told Paul Calamari, the regional claims director of CIC that Kreitzer had been suspended from the practice of law and that Pariser was taking over the management of the firm.[2]

On March 19, 1997, Pariser sent a letter to Jo Ciarelli of Bertholon–Rowland ("Bertholon"), which performed underwriting services for CIC. The letter confirmed his conversation with Calamari.

In April of 1997, an unlimited extended reporting period endorsement was purchased from CIC by or on behalf of K & V, extending without limitation the period in which claims against K & V could be reported under the policy. This coverage began on March 26, 1997, and was obtained in exchange for a $63,467 premium. Prior to the issuance of this renewal, CIC had learned of five additional actual claims against K & V in the previous year. The

---

1. CIC also moved to dismiss defendants' estoppel claim because under New York law, where an applicant makes misrepresentations in an insurance application, the applicant is barred from claiming an estoppel based upon any allegedly improper conduct by the carrier. *Trainor v. John Hancock Mutual Life Ins. Co.*, 54 N.Y.2d 213, 217–18, 445 N.Y.S.2d 81, 82–83, 429 N.E.2d 759 (1981). Defendants presented no opposition to this claim and

have not reasserted their estoppel claim. Therefore, that claim is dismissed.

2. Defendants claim that Pariser also told Calamari that he had discovered a "multitude" of legal malpractice claims when he took over the management of the firm. CIC disputes that Pariser informed Calamari of the multitude of claims.

following former clients had initiated these claims: Jacques Cohen (in March of 1996), Helen Dietch (on August 22, 1996), Helen Valerio (on September 17, 1996), Ann Mafia (on October 24, 1996), and John Molina (January 1997).

On April 22, 1997, CIC received notice of a claim by a former client Tartaglia.

On May 16, 1997, Pariser advised Terri Daniels, also of Bertholon, of eleven (11) additional potential claims, stating that the majority of these cases "are or will be dismissed based upon Mr. Kreitzer's neglect." Pariser also noted that many more cases in K & V were not viable due to Kreitzer's neglect.

Bertholon reported nine (9) additional possible claims on June 6, 1997, and acknowledged receipt of twenty-four (24) possible claims on June 11, 1997. On July 2, 1997, Pariser forwarded a summary of 115 potential claims against Kreitzer.

In June of 1997, CIC retained counsel to evaluate its coverage options with respect to the K & V policies. From June of 1997 to September of 1997, two attorneys coordinated with Pariser and Vogelman several reviews of the K & V files as to which potential claims were reported to CIC during that period. The reviews were made difficult by the disarray in some of K & V's files and the fact that K & V could not immediately locate some files. During this time, counsel also obtained from CIC's home office in Chicago and Bertholon's New York City office the extensive underwriting information pertaining to the CIC policies issued to K & V and analyzed the same regarding the then-possible non-disclosures to CIC in connection with policy application inquiries. CIC claims that it

was considering the possibility of rescission throughout this period, but that the many factors involved required further review and analysis.[3]

On July 15, 1997, coverage counsel for CIC informed them that in counsel's opinion K & V had made misrepresentations on policy applications (1) with respect to charges brought against Kreitzer and his suspension from the practice of law, and (2) on 21 separate client files by failing to disclose in the policy applications potential claims that might arise from these files.

On August 13, 1997, CIC wrote to Pariser acknowledging receipt of "numerous potential claims" against Kreitzer.

ON August 15, 1997, coverage counsel for CIC informed them that in counsel's opinion, K & V had made misrepresentations on another 16 separate files by failing to disclose on the policy applications potential claims that may arise from these files.

On September 12, 1997, coverage counsel for CIC informed them that in counsel's opinion K & V had made misrepresentations on another client file by failing to disclose in the policy application a potential claim that might arise from it.

By letter dated November 12, 1997, CIC notified defendants it was rescinding the Policies. This action was filed on November 19, 1997.

CIC filed this summary judgment motion on January 9, 2002, and the defendants filed their cross-motion on March 19, 2002. Oral argument was heard on April 17, 2002, and the motion was considered fully submitted at that time.

---

**3.** Prior to this time, CIC had never rescinded a professional liability policy issued to a New York lawyer based upon a failure to disclose potential claims. Therefore, CIC raised with its counsel various issues which it wanted counsel to address concerning rescission. Coverage counsel responded to these inquiries with written reports dated October 7, 1997; October 21, 1997; and October 24, 1997.

## Discussion

### Standard for Summary Judgment

Rule 56(e) of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gibbs–Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir.2002).

### I. CIC Has Not Shown that the Misrepresentations Were Material as a Matter of Law

The only issue presented before the Court on CIC's first claim is whether CIC may prove and has proven that the misrepresentations were material in the absence of supporting documentation.

As stated in the earlier opinion, "supporting documentation such as underwriting manuals, rules, or bulletins, is typically required." 2000 WL 16949, at *7. CIC argues that "typically" does not mean always.

CIC first presents two New York state court cases that it claims stand for the proposition that documentary support for the materiality of the defendants' misrepresentations need only be presented "if available." Both cases, however, involve appeals of cases that were tried, rather than that were decided on motions for summary judgment. *Brown v. Metropolitan Life Ins. Co.*, 41 A.D.2d 930, 343 N.Y.S.2d 443 (2d Dep't 1973) (ordering new trial);[4] *Lindenbaum v. The Equitable Life Assur. Soc.*, 5 A.D.2d 651, 174 N.Y.S.2d 421 (1st Dep't 1958) (same).

CIC also cites a number of cases that, in applying the laws of other states, determined that materiality may be determined as a matter of law in various circumstances, including those similar to that presented here. *E.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mason, Perrin, & Kanovsky*, 765 F.Supp. 15, 18 (D.D.C.1991) (looking to "pendency of claims"); *Wittner, Poger, Rosenblum & Spewak, P.C. v. The Bar Plan Mutual Ins.*, No. 70655, 1997 WL 597407, at *6 (Mo.Ct.App. Sept.16, 1997) ("When an attorney misrepresents a fact on an application for professional liability insurance by confirming the non-existence of circumstances which could result in a malpractice

---

4. In addition, CIC misreads *Brown*. There, the defendant insurer had appealed a jury verdict for the plaintiff, claiming that the plaintiff had misrepresented his past medical history and treatment. The only proof of materiality was the testimony of a doctor, who "alluded to the written guide used by defendant in determining whether to accept a particular risk for coverage, but it was not of-fered in evidence." *Id.* at 932, 343 N.Y.S.2d at 446. The court, in ordering a new trial, concluded that the defendant "should buttress the oral testimony with documentary evidence, if available." *Id.* The court did not conclude that, if documentary evidence were not available, the doctor's testimony alone would constitute materiality as a matter of law.

claim, the inaccuracy of that answer may be considered material to the issuance of the policy as a matter of law.") (*citing Continental Cas. Co. v. Maxwell,* 799 S.W.2d 882, 889 (Mo.Ct.App.1990)). In order to define "materiality" for this case, it is necessary to interpret a New York statute, Section 3105(b) of New York's Insurance Law. Because these cases do not interpret materiality according to this statute, they are not persuasive.

CIC presents two cases interpreting New York law, only one of which stands for the proposition that documentary evidence need not be proffered.[5] In *L. Smirlock Realty Corp. v. Title Guarantee Co.,* 70 A.D.2d 455, 421 N.Y.S.2d 232, 237–38 (2d Dep't 1979), *as modified by* 52 N.Y.2d 179, 437 N.Y.S.2d 57, 418 N.E.2d 650 (1981) (finding policy was not rendered void pursuant to misrepresentation provision found therein as plaintiff was under no duty to disclose the publicly available information to defendant) the court concluded that in the absence of any evidence concerning what a title insurer would have done had it known the true facts of the property it was insuring, it nevertheless could conclude as a matter of law that the insured's particular non-disclosure deprived the insurer "of its freedom of choice in determining the nature, scope and extent of the risk it would assume . . . ." The court recognized that the non-disclosures could be of such a nature that it is "obvious" that the insurer would not have issued the same (or any) policy, and that no insurer would do so under the same terms as the policy that was in place. *Id.*

More recent authority, however, contradicts this decision, as discussed in the Opinion. 2000 WL 16949 at *7 (*citing Carpinone v. Mutual of Omaha,* 265 A.D.2d 752, 697 N.Y.S.2d 381, 384 (3d Dep't 1999) ("For an insurer . . . to establish the materiality of a misrepresentation as a matter of law, it was required to present documentation concerning its underwriting policies such as its underwriting manuals, rules, or bulletins which pertain to insuring similar risks."); *Kantrowitz v. Paul Revere Life Ins. Co.* No. 95 Civ. 2204(DLC), 1997 WL 128463, at *4 (S.D.N.Y. March 19, 1997) (applying New York law) ("Conclusory statements by insurance company employees, standing alone, however, are insufficient to support summary judgment."); *Feldman v. Friedman,* 241 A.D.2d 433, 434, 661 N.Y.S.2d 9, 10 (1st Dep't 1997) ("The conclusory, self-serving affidavit of defendant's employee that the insurer would not have issued the policy but for the misrepresentations is not enough, by itself, to support the insurer's burden.")). The later cases are more persuasive, and hence CIC must present documentary

---

**5.** CIC also cited *St. Paul Fire & Marine Ins. Co. v. Horowitz & Pollack* (Sup.Ct., N.Y.Co. 1998), available in N.Y.L.J., at 30, col. 4 (Feb. 13, 1998) in its opening memorandum. There, the plaintiff insurer moved for summary judgment declaring three attorney malpractice policies void *ab initio* due to material misrepresentations regarding a named attorney at the defendant firm, Sidney Pollack. *Id.* At the time the policies issued, Pollack was engaged in a criminal conspiracy to embezzle funds. *Id.* The court concluded that "[t]he failure of an attorney to disclose that he or she embezzled funds or solicited kickbacks for fraudulent investments in response to a ques-

tion similar to the second question quoted herein, is grounds for rescission of the attorney's malpractice policy: it is clear that such knowledge would be material to an insurance underwriter in deciding whether or not to issue a malpractice policy." *Id.* It is not clear from the opinion whether the plaintiff had submitted evidence to support the court's conclusion or whether it determined it based on the circumstances before it alone. If the latter is true, the court failed to cite any case law for the proposition that it could so decide as a matter of law in the absence of supporting evidence. As a result, this case also is not persuasive.

support for the assertions of its employee that CIC would have denied the application in order to succeed on its summary judgment motion.

CIC has failed to present corroborating evidence in the form of underwriting manuals, rules, or bulletins and admits that no such evidence is available as there were no guidelines in effect. Therefore, CIC may not prevail on summary judgment and its motion is denied.

## II. *A Material Issue of Fact Remains as to Whether Waiver Occurred*

In the Opinion, it was held that although the issue of waiver may be decided as a matter of law, "the question presented is a close one, the record does not compel such a result, and CIC's delay from the Spring of 1997 to November of 1997 is susceptible of alternative interpretations." 2000 WL 16949 at *10.

■ While both parties have accumulated more facts in this second attempt at summary judgment, they have not altered the fact that months-long delay is capable of several interpretations and thus is not ripe for summary judgment. CIC argues persuasively that it did not want to be forced to make a "rash decision" and wanted necessary time to sift through the evidence before it. Pl.'s Mem. at 8. Further, CIC claims that it "promptly" retained counsel in June 1997 to aid it in investigating potential rescission and coverage options. Yet the defendants also persuasively point out that CIC had a plethora of knowledge that should have triggered a swifter response. CIC was aware of Kreitzer's suspension from the practice of law in March of 1997, yet did not make even *pro forma* inquiries regarding it. Further, at the time of the policy extension in April of 1997, CIC had identified the K & V policy as "high risk" and was aware of 10 actual claims filed against K & V in the

three years prior to the request. It is up to the trier of fact to determine which side is more persuasive. Therefore, this issue may not be decided in favor of either party on summary judgment, and the motions regarding it are denied.

For the foregoing reasons, the motions are denied.

A pretrial conference will be held in September on a date convenient to counsel to schedule any further proceedings.

It is so ordered.