[No. 3-39842-2.    Division Two.    September 23, 1969.]

ROBERTA D. FRASER, *Appellant,* v. JESSIE J. MONROE *et al.,*
*Respondents.*

*Wallace & Fraser* and *William H. Fraser,* for appellant.

*Dudley N. Perrine,* for respondents.

PETRIE, J.—Several creditors of a retail business establishment in Bremerton, Washington, known as "Carmen's" have assigned their claims to the plaintiff, Roberta D. Fraser. Carmen Bartholomew, the owner of the business, has been discharged from liability in these and other claims after having been declared a bankrupt. She is not a party to this action. Plaintiff has, however, brought this action against Carmen Bartholomew's parents, Jesse J. and Olive M. Monroe. She contends that Mr. and Mrs. Monroe had fraudulently misrepresented they were the owners of "Car-

men's" and credit had been extended to the business in reliance upon that representation.

Some time after trial, the court summarized the evidence and declared in a memorandum opinion, "It seems to me that what we have here is a loose confused relationship for which everyone is partially responsible." We agree. Further, the court stated, "I conclude simply by saying that defendant's misrepresentations were not those upon which any creditor relied to his damage." Again, we agree.

The difficulty with the trial court's concluding remarks is that it had previously adopted a series of factual findings, one of which, findings of fact 17, clearly stated that the creditors had relied upon the misrepresentation.

Thereafter, the court entered judgment in favor of defendants and dismissed plaintiff's action with prejudice.

Under this state of the record, the plaintiff appealed to the Supreme Court assigning error to the trial court's conclusions of law and judgment, but accepting and relying upon the court's findings of fact. Respondent, on the other hand, assigns error to the court's findings of fact 17. By order of the Supreme Court, the matter has been transferred to Division 2 of the Court of Appeals.

■ Because of the posture of the appeal, we deem it necessary to dispose of a procedural matter prior to considering the merits of the appeal. Essentially, plaintiff contends that ROA 33 (similar to CAROA 33 in this court) precludes the defendants from assigning error to a finding of fact without also filing a cross-appeal and properly qualifying as cross-appellants. This contention is without merit.

A respondent who seeks no affirmative relief in the appellate court, but who merely seeks to sustain the final order, judgment or decree of the trial court may assign error to factual findings entered by the trial court.

*Burt v. Heikkala*, 44 Wn.2d 52, 265 P.2d 280 (1954); *Trudeau v. Pacific States Box & Basket Co.*, 20 Wn.2d 561, 148 P.2d 453 (1944).

The defendants, therefore, have properly assigned error to the court's findings of fact 17.

Turning now to the merits of the appeal, the facts as established by the unchallenged findings of fact are as follows: In 1963, the defendants, Jesse J. Monroe and Olive M. Monroe, husband and wife, helped their daughter, Carmen Bartholomew and her husband, Frank, start a retail women's apparel business known as "Carmen's" in Bremerton, Washington. The defendants signed a lease in their name alone for business premises upon which "Carmen's" was located. To further assist the Bartholomews, the defendant, Jesse Monroe, made an initial deposit of $1,500 and signed a bank signature card under the name and style of Jesse Monroe, doing business as "Carmen's." The defendant deposited additional sums totaling $13,500 to the account. Mr. and Mrs. Monroe never participated in the management of the store and all checks drawn on the bank account were signed by either Carmen or Frank Bartholomew.

In March, 1963 the defendant, Jesse Monroe, also signed forms supplied to him by two credit reporting agencies, Dun & Bradstreet and Credit Exchange, Inc. Information on these forms indicated that the business known as "Carmen's" had $10,000 capital and Jesse Monroe was the owner thereof. Plaintiff's assignors, a group of clothing manufacturers who extended credit to "Carmen's" were all subscribers of the aforementioned credit reporting agencies.

In 1964, Carmen and Frank Bartholomew filed a petition for bankruptcy alleging that they were the owners of the store. As a result of such proceedings, the Bartholomews were discharged from liability on the claims of plaintiff's assignors.

Both plaintiff and defendants agree as to the oft-repeated basic elements which a plaintiff must establish in order to prevail in a fraudulent misrepresentation case. These elements were last summarized by the Supreme Court in *Beckendorf v. Beckendorf,* 76 Wn.2d 457, 462, 457 P.2d 603 (1969) as follows:

The elements necessary to establish fraud—all of which must be shown by clear, cogent, and convincing evidence

—are a representation of an existing fact; its materiality; its falsity; the speaker's knowledge of its falsity; his intent that it shall be acted upon by the person to whom it is made; ignorance of its falsity on the part of the person to whom it is addressed; *the latter's reliance on the truth of the representation;* his right to rely upon it; and his consequent damage.

(Italics ours.)

The defendant's assignment of error to findings of fact 17 attacks the finding of reliance.

The real issue is, therefore, whether or not there is substantial evidence in the record to support findings of fact 17. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

There is no direct evidence in the record from any of plaintiff's assignors that they relied upon defendants' misrepresentations in extending credit to "Carmen's." Rather, plaintiff contends, the established fact that all of her assignors were subscribers to both Dun & Bradstreet and Credit Exchange, Inc. creates sufficient presumption from which we can infer that reliance did in fact occur. Plaintiff cites no authority for such a proposition.

Before we—or any court—could hold as a matter of law, that proof of subscribership creates the presumption from which reliance may properly be inferred we should be reasonably assured that a logical sequence of events flows automatically and inevitably from the fact of subscribership to the fact of reliance. That flow of events should include, in part, an automatic and inevitable action by the credit reporting agency (1) to prepare a financial rating report in all instances immediately or shortly after receipt of basic data from one source or another; (2) to communicate such report to all subscribers to the agency within a reasonably predictable period of time; and (3) to obtain some assurance that such report was in fact received by all subscribers. More importantly, of course, there should be some reasonable assurance that subscribers who receive such reports inevitably do understand them and do so extend or withhold credit in accordance with a knowledge-

able understanding of such reports. If it cannot be assumed with some reasonable assurance that such a sequential flow of events develops as a matter of routine course, then it can hardly be said that proof of subscribership demonstrates by clear, cogent and convincing evidence a specific creditor-subscriber relied upon specific information gathered by a credit rating agency.

To state the proposition in this fashion is, we believe, to deny its validity.

Furthermore, the record before us clearly demonstrates that such a continuous and automatic flow of events did not occur in this instance. In the first place, the record is silent as to whether or not Credit Exchange, Inc. ever prepared a credit report let alone whether or not it communicated such a report to plaintiff's assignors. Additionally, the Seattle district manager for Dun & Bradstreet, when asked what occurred in March, 1963, following receipt of the report form signed by Mr. Monroe, answered, "I do not know. We would normally write a report following this information." Yet this same witness presented the company files "listing *all* the reports we had written and the forms back of these reports," and it is apparent that the first credit report included therein was not dated until September 27, 1963. In addition, a former investigator for Dun & Bradstreet declared that a credit report is transmitted only to those subscribers "who have inquired specifically about this business over the past year."

The record affirmatively establishes, therefore, that there was no sequential series of events in the usual course of business to permit us to accept proof of subscribership as proof of reliance by any specific creditor. Accordingly, we must hold that there is no substantial evidence in the record to support the trial court's findings of fact 17. Failure to establish this basic element of proof is fatal to plaintiff's cause of action. *Beckendorf v. Beckendorf, supra; Puget Sound Nat'l Bank v. McMahon,* 53 Wn.2d 51, 330 P.2d 559 (1958).

Although we must find that one of the trial court's findings

of fact cannot be sustained, we reach the same conclusions of law as the learned trial court. The judgment of the trial court is affirmed.

ARMSTRONG, C. J., and PEARSON, J., concur.