OPINION OF THE COURT
Jasen, J.
The question presented by this appeal is whether an insurance company’s failure to follow Insurance Department regulations when issuing a replacement life insurance policy estops it from raising the insured’s material misrepresentation on an application for life insurance as a defense to liability under that new policy.
Plaintiff, Darlene Trainor, seeks to recover in excess of $79,000 under a life insurance policy written on her husband’s life approximately seven months before his death in January, 1977. It is undisputed that in applying for that policy, Mr. Trainor did not disclose his prior hospitalization for alcoholic hepatitis and cirrhosis of the liver. It is similarly undisputed that if that medical information had been revealed, the policy would not have been written.
*216 Prior to taking out the policy in dispute, the Trainers had allowed six separate policies on various members of their family to lapse for nonpayment of premiums. Four of the six policies automatically converted to paid-up term insurance under the extended benefits provisions of those contracts. The total value of the extended term benefits was $9,522.
In late June, 1976, Hancock’s agent visited the Trainers to discuss reinstating the lapsed policies. Instead, at least in part because Mr. Trainor had lost insurance benefits when he was laid off from his position as a New York City policeman, a plan was formulated whereby the old policies would be cashed in and a new policy written. The new policy provided for, at a comparable monthly premium, superior benefits. Hancock’s agent waited until the new policy had cleared underwriting and been issued before processing the cash surrender forms and applying the value of the old policies to the new policy’s initial premiums.
It is undisputed that in the course of formulating and executing this plan Hancock’s agent did not comply with Insurance Department regulations. (11 NYCRR Part 51.) Those regulations require the agent to obtain a statement listing existing policies and whether or not the new policy is intended to replace any of the existing policies. If the agent believes that the new policy is intended as a replacement policy, he must submit the proposal he presented to the insured along with certain disclosure statements to the company. The company is required to both inform its agents of these regulations and see that the regulations are complied with. The intent of the regulations is that “by reducing the opportunity for misrepresentation and incomplete comparison in replacement situations, and by precluding unfair methods of competition and unfair practices” that each insured will be able to make an informed decision in his own best interests. (11 NYCRR 51.1.) The particular effect of this agent’s failure to comply with the regulations was that Mr. Trainor was not properly warned that the new policy would be contestable for a two-year period.
The effect of the agent’s failure to comply with the regulations also made it significantly more difficult for the company to discern that this was, in fact, a replacement policy. *217 This difficulty was compounded because the policy was being written for one of the company’s current insured so that no credit check, which might have revealed that this policy was intended to replace existing policies, was requested. The trial court correctly attributing the actions of the agent to the company held that Hancock had violated public policy by failing to conform to the Insurance Department regulations.
Based on this finding, the trial court found the determinative question to be “whether the insured’s alleged misrepresentations so outweigh Hancock’s violations that plaintiff should be barred from recovering despite those violations.” The court then held that although the decedent’s misrepresentation would normally bar recovery under the new policy, Hancock could not disclaim its obligations because Hancock had sought and accepted the benefits of the replacement contract. The Appellate Division affirmed, without opinion. We now reverse and dismiss the complaint.
Recently, in Tannenbaum v Provident Mut. Life Ins. Co. of Phila. (41 NY2d 1087), we had occasion to pass on the question of when an insurer would be estopped from relying on misstatements in the insurer’s application in order to void a policy. In that case, we held that “there [was] sufficient evidence in the record for the jury to find that the defendant should be estopped from relying on the misstatements in the insured’s application in order to void the policy.” The invocation of estoppel by the plaintiff against the defendant insurance company was condoned by this court only because the conduct of the company had been so violative of public policy that estoppel was authorized in support of those regulations and the public policy they embodied. (Tannenbaum v Provident Mut. Life Ins. Co. of Phila., 41 NY2d 1087, 1089, supra; 3 Pomeroy’s Equity Jurisprudence [5th ed], § 941, pp 733-734.)
In the Tannenbaum case, the plaintiff’s husband had $200,000 worth of fully effective life insurance written by the Guardian Insurance Company (Guardian). His agent, formerly with Guardian, induced the insured to surrender his policy with Guardian, which was incontestable, and secure comparable coverage with the agent’s new employer, *218 the Provident Mutual Life Insurance Company (Provident) . As part of his effort to convince the insured to change companies, the agent gave the insured written comparisons of the benefits and costs of the two policies, but failed to explain that the new policy would be contestable for a two-year period. Although Provident’s agent did not indicate to the company that this was a replacement policy, Provident, unlike Hancock, was made aware that the policy they were to issue was intended to replace Guardian’s policies by a credit bureau report requested by Provident’s underwriting department. Despite this information, they failed to either require their agent to conform to the applicable regulations or to inform Guardian of the intended replacement as required by regulation. That regulation was also designed to assure full disclosure to the insured and to reduce potentially harmful competition. The sum total of Provident’s actions which amounted to actively inducing the insured to change policies despite the fact that such a change would not be in the insured’s best interests led this court to hold that Provident had so violated public policy that the plaintiff should be allowed to invoke estoppel despite the parties status in pari delicto.
The parties in the present case are also in pari delicto, there being no dispute that the company failed to comply with the applicable regulations and that the insured failed to disclose a prior hospitalization that, if known by the company, would have prevented the policy from being issued. This, then, is a case of counterestoppel, the normal effect of which is that the two estoppels “destroy each other”. (21 NY Jur, Estoppel, § 71, pp 105-106.) It is only in cases such as Tannenbaum (41 NY2d 1087, supra) where “public policy is considered as advanced by allowing either party to sue for relief against the transaction” (3 Pomeroy’s Equity Jurisprudence [5th ed], § 941, p 733) that the courts will interfere and allow one estoppel to rise above the other. (3 Pomeroy’s Equitable Jurisprudence [5th ed], § 941, pp 733-738.)
But it is incumbent upon courts when determining whether or not the case before them warrants application of the public policy exception to the rule of counterestoppel *219 to weigh the facts of each case as they relate to the over-all public policy of this State.
This court, in deciding Tannenbawn (41 NY2d 1087, supra), found that Provident’s violations of the Insurance Department regulations were so gross that Provident’s misconduct outweighed the insured’s misconduct. This determination was a recognition that these regulations were designed to protect against the very situation in Tannenbaum (41 NY2d 1087, supra) where an insured is induced to replace existing coverage and, as a result, not only loses the benefits of that coverage, but also is left without legal or equitable remedy.
Neither the concerns of equity nor public policy dictate such a result in this case. Instead, it is possible for equity to formulate an alternate remedy which would return the parties to their original position prior to their misconduct. The concerns of public policy and equity are better served by formulating a remedy which does not allow either party to recover as a result of its wrongdoing. This is particularly so in a case such as this, where the plaintiff stands to recover a windfall if the exception to the rule of counterestoppel is applied.
In sum, we hold that the plaintiff is estopped by the insured’s fraudulent misrepresentations from claiming under the new policy, since that policy would not have been written but for that misrepresentation. (30 NY Jur, Insurance, § 946, pp 314-315.) But the defendant’s own misconduct in violating relevant Insurance Department regulations when issuing replacement life insurance policies precludes them from disclaiming all liability. Return to status quo ante requires that Hancock reinstate the previous policies and pay the plaintiff the benefits owing under those policies. This offer to restore the parties to their original status prior to their respective misconduct we assume is still open to the plaintiff and our disposition is based upon the confident expectation that it will be honored.
Since neither public policy nor equity requires a different result, the order of the Appellate Division should be reversed and the plaintiff’s complaint should be dismissed, without prejudice to a claim under the prior policies.
*220 Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, without costs, and complaint dismissed, without prejudice to a claim under the prior policies.