[No. 29088-6-I. Division One. December 31, 1992.]

SUSAN B. STROTHER, *Respondènt*, v. CAPITOL BANKERS LIFE INSURANCE COMPANY, *Appellant*.

*Ronald Schaps, Patrice Johnston,* and *Bogle & Gates,* for appellant.

*Evan E. Inslee* and *Inslee, Best, Doezie & Ryder P.S.,* for respondent.

FORREST, J. — Capitol Bankers Life Insurance Co. (hereinafter Capitol) appeals the trial court's ruling that it was precluded from voiding Susan Strother's (hereinafter Strother) deceased husband's life insurance policy. Strother assigns error to the trial court's dismissal of her Consumer Protection Act claim. We reverse the trial court's judgment and remand.

Strother's husband, Mark, purchased a $250,000 life insurance policy from the Mutual Life Insurance Company of New York (hereinafter MONY) that became effective in September 1984. The purchase of life insurance was made pursuant to Mark's purchase of a veterinary clinic from Dr. Thomas Van Meter. The purchase agreement for the clinic required Mark to maintain life insurance for the 10-year period in which payment on the clinic would be made.

Donald Mason was an agent of Capitol and a social and business acquaintance of Dr. Van Meter. Dr. Van Meter apparently referred Mason to Mark in 1984. At that time, Mason prepared a number of policy proposals for Mark among which was one which, if accepted, would have been a replacement policy for the MONY policy. However, Mark chose to purchase the MONY life insurance policy.

A year later, in September 1985, Mason again contacted Mark regarding life insurance. An application for a $250,000 life insurance policy was filled out by Mason and signed by Mark. That application contained certain misrepresentations. First, the application indicated that Mark, an avid mountain climber, had not participated in mountain climbing within the last 3 years. Second, the application indicated that the insurance was not intended to be a replacement policy, *e.g.*, a policy which replaces another. Third, the application indicated that Mark only had a $40,000 policy with MONY and did not disclose that he also had another policy with MONY in the amount of $250,000.

Because the application indicated that the policy was not a replacement policy, no notices were issued to Mark or MONY as required by the Washington Administrative Code. The regulations require that in the case of replacement policies a notice must be sent to the applicant informing him of the hazards of replacing an existing life insurance policy. They also require that the replacing insurer send a notice to the existing insurer advising it of the proposed replacement.

The existing insurer is then free to contact the applicant and caution him against replacement.

Two days after Mark signed the application he instructed his wife to stop payment on the check written to pay the premium for the MONY policy. Only under the MONY policy, not the Capitol policy, was Mark insured for the risks of mountain climbing. The new policy was issued by Capitol on November 21, 1985. On December 2, 1985, the approved policy was sent to Mark, with a copy of the application attached.

Mark died in a mountain climbing accident in August 1986. Because the application for the Capitol policy contained a material misrepresentation as to Mark's mountain climbing activities, Capitol refused to issue payment on the $250,000 life insurance policy. Strother filed suit against Mason and Capitol, alleging in part that Capitol was precluded from denying coverage. The claim against Mason was dismissed without prejudice prior to trial.

At trial, Strother alleged that because Mason knew or should have known that the policy was a replacement policy, but none of the required regulatory notices were issued by Mason or Capitol, Capitol should be precluded from denying coverage on the basis of material misrepresentations on the application. Strother demanded a jury trial, but requested that only one issue be submitted to the jury: whether Mason knew or should have known as of the date of the application that the policy was intended to be a replacement policy. The trial court granted Strother's request. The jury answered the special verdict form in the affirmative.

The trial court concluded that as a matter of public policy, Capitol was precluded from denying coverage due to its failure to comply with the regulatory notice requirements. The trial court also rejected claims Strother had brought under the Consumer Protection Act, concluding that Strother had not established a causal link between an unfair practice and her injury and that Strother was precluded from recovering due to Mark's fraud.

PRECLUSION ON PUBLIC POLICY GROUNDS

■■ Capitol assigns error to the trial court's conclusion of law 1,[1] holding that public policy precludes Capitol from voiding the policy on the basis of Mark's misrepresentations. We agree. Public policy as to material misrepresentations is established by *Hein v. Family Life Ins. Co.*[2] Pursuant to the rule set forth in *Hein*, it is immaterial whether the insured or the agent was responsible for misrepresentations in the application. When the policy is issued and the applicant is sent a copy of the policy with the application attached, the applicant has the opportunity and the *duty* to read the application and correct any misrepresentations.[3] Failure to report any misrepresentations amounts to ratification of those misrepresentations.[4] Pursuant to *Hein*, Mark's ratification of the material misrepresentations in the application prevents Strother from recovering on the policy.[5]

Strother does not challenge the *Hein* rule but urges this court to supplement it by adopting the New York rule established in *Tannenbaum v. Provident Mut. Life Ins. Co.*[6] In *Tannenbaum*, the deceased insured failed to disclose a men-

---

[1]"As a matter of public policy, the jury's finding that Donald Mason, who was an agent of Capitol Bankers Life Insurance Company, knew or should have known that the Capitol policy was a replacement policy and Donald Mason's failure to comply with the notice provisions of WAC 284-23-400 through 284-23-500 preclude Capitol Bankers Life Insurance Company from voiding the insurance policy because of the admitted material misrepresentations made in the application for insurance."

[2]60 Wn.2d 91, 376 P.2d 152 (1962). *See also Brown v. Jackson Nat'l Life Ins. Co.*, 48 Wn. App. 268, 274, 738 P.2d 701 (stating "The *Hein* rule is still valid"), *review denied*, 109 Wn.2d 1004 (1987).

[3]*Hein*, at 95.

[4]*Hein*, at 97.

[5]*See Williams v. Metropolitan Life Ins. Co.*, 10 Wn. App. 600, 605-06, 519 P.2d 1310 (1974).

[6]53 A.D.2d 86, 386 N.Y.S.2d 409 (1976), *aff'd*, 41 N.Y.2d 1087, 364 N.E.2d 1122, 396 N.Y.S.2d 351 (1977).

tal disorder in his application. The application also indicated that the policy was not intended to replace another. However, a customary investigation procured by the insurer indicated that the policy *was* intended to replace another. The insurer did not request further investigation and issued the policy without contacting its agent or the prior insurer as to the intended replacement.[7] Thus, the insured received no counseling as to the hazards of replacing his existing insurance. The New York court reasoned that due to the insurer's negligence in not further investigating the matter, the insured replaced incontestable insurance with contestable insurance without the benefit of vital information.[8] Citing public policy, the court invoked the doctrine of equitable estoppel to preclude the insurer from denying coverage.[9]

■ ■ Although the trial court in the case at bar specifically rejected the estoppel theory advanced in *Tannenbaum*, it appears to apply the same concept under a different name, holding that failure to issue the required replacement notices precludes assertion of Capitol's position that Strother's recovery is barred by the misrepresentations. We conclude that adoption of the estoppel theory of *Tannenbaum* or the trial court's public policy reasoning would produce indefensible results. Under either analysis, if Mark had previously held a $125,000 policy with MONY, Capitol would still be liable on its $250,000 policy. Such a windfall to Strother would be totally unwarranted considering that she is bound by Mark's misrepresentations.[10]

---

[7]*Tannenbaum*, at 90-91.

[8]*Tannenbaum*, at 100.

[9]*Tannenbaum*, at 101-02.

[10]As in the case at bar, the existing policy and the replacing policy in *Tannenbaum* were of equal amounts. However, in *Trainor v. John Hancock Mut. Life Ins. Co.*, 54 N.Y.2d 213, 219, 429 N.E.2d 759, 445 N.Y.S.2d 81, 84 (1981), the New York court was confronted with the inequity which can result from the "estoppel theory". In *Trainor* the original policy was much smaller than the substituted policy, but both policies were with the same company. Faced with these facts the

The purpose of the Washington Administrative Code provisions[11] governing the sale of replacement life insurance policies, sometimes referred to as the "twisting" regulations, is to protect the holder of an insurance policy from making an unwise choice in canceling an existing policy and buying a new policy. A decision to replace an existing policy may be good or bad depending on the facts. The evil to be avoided is unwise cancellation. The remedy should be to give the insured the benefit of his prior policy, not the benefit of his new policy.[12] To deprive Capitol of the right to assert a misrepresentation defense is in effect to allow Strother to enforce the policy in the face of Mark's misrepresentations. We reject the trial court's conclusion that Capitol is precluded from asserting misrepresentations to avoid the policy.

Contrary to Capitol's position, however, rejection of the trial court's conclusion does not necessarily mean that Strother has no remedy. Her claim is properly analyzed as a classic negligence tort action based on a duty to a plaintiff and a breach of that duty proximately causing damage.[13]

JURY INSTRUCTIONS

Before analyzing the elements of a tort action as applied to this case we need to consider Capitol's challenge to the jury's finding that Mason knew or should have known that he was selling a replacement policy.

■ ■ Capitol first asserts that this finding was based on improper instructions. The trial court has broad discretion in framing instructions to the jury so long as they are

---

court chose to merely reinstate the prior policy. While equitably an appropriate result on the facts, the legal theory utilized is thin and unsatisfactory.

[11]WAC 284-23-400 through -485.

[12]In this case there is no difference in the dollar result between enforcing the new or old policy because the policies have the same face amount. But clearly such would not always be the case.

[13]See Hansen v. Friend, 118 Wn.2d 476, 479, 824 P.2d 483 (1992).

accurate statements of the law and allow each side to argue its theory of the case.[14] Capitol assigns error to instructions 11 and 12 given by the court. Instruction 11 reads:

> An insurance company has the right to rely upon the representations in an application for insurance and there is no duty on the part of the insurance company or the insurance company's agent to question the veracity of the applicant or to pursue or seek out undisclosed information absent having knowledge of information that would require it to investigate or inquire further.

Capitol objects to the inclusion of the phrase, "absent having knowledge of information that would require it to investigate or inquire further." In WAC 284-23-410 "replacement" is defined as

> any transaction in which . . . *it is known or should be known* to the proposing agent . . . that by reason of such transaction, existing life insurance or annuity has been or is to be:
> (1) Lapsed, forfeited, surrendered, or otherwise terminated;

(Italics ours.) The regulations governing replacement policies clearly do not permit the agent or insurer to rely blindly on the application. On the contrary, agents' actions are to be judged in light of all the information known to them from any source. The challenged language of the instruction properly reflects the additional duty imposed on the agent and insurer in the sale of replacement policies to prevent "twisting".

Instruction 12 reads:

> The word "known" as used in these instructions means to have knowledge.
> The term "should be known" as used in these instructions means a reasonable person of ordinary intelligence, based on the information known, should have known that a replacement would, in fact, or would likely take place.

Capitol argues that WAC 284-23-410 imposes no duty on the agent to go beyond the answers on the application. We dis-

---

[14]*Seattle Western Indus., Inc. v. David A. Mowat Co.*, 110 Wn.2d 1, 9, 750 P.2d 245 (1988).

agree. The trial court properly used the standard as mentioned in WAC 284-23-410, whether "it is known or should be known". WAC 284-23-410. The language of the instruction is also supported by WAC 284-23-440(1)(b), which requires the agent to sign a statement as to whether replacement "is or *may be* involved in the transaction." (Italics ours.)

■ Capitol also objects to the failure to give its requested instructions 3[15] and 5,[16] but fails to demonstrate that they were necessary and appropriate to guide the jury's deliberations on the issue submitted. Although abstractly correct statements of the law, and relevant in a suit on the insurance policy, we do not find the proposed instructions helpful to the jury deciding the issue submitted: in light of all the facts did Mason know or should he have known that he was selling a replacement policy? We find no abuse of discretion or error in the trial court's instructions to the jury.

## JURY FINDING

■■ Next Capitol argues that the evidence is insufficient to support the jury's finding that Mason knew or should have known that Mark intended the Capitol policy to replace another policy. In reviewing a jury's finding of fact this court's inquiry is limited to whether that finding is supported by substantial evidence.[17] The jury is free to judge the credibility of the witnesses before it.[18] This court need

---

[15]"Where a fact is specifically inquired about on an application for insurance, or a question so framed as to elicit a desired fact, a full disclosure must be made by the applicant and the insurance company has the right to rely upon the applicant's answer."

[16]"An applicant for insurance has a duty to read the application which he signs and you must proceed on the basis that the deceased did read the application before he signed it. It is immaterial whether or not the application was filled out by the insurance agent."

[17]*Department of Fisheries v. Gillette*, 27 Wn. App. 815, 822, 621 P.2d 764 (1980).

[18]*Harding v. Warren*, 30 Wn. App. 848, 851, 639 P.2d 750 (1982).

only consider the evidence most favorable to the prevailing party.[19]

We find that there was substantial evidence to support the jury's finding that Mason knew or should have known that Mark intended the Capitol policy to replace another policy. The jury was entitled to find that Mason was referred to Mark by Dr. Van Meter, a personal friend of Mason's, who knew of Mark's need for insurance through the purchase of the clinic and who had arranged to share in Mason's commission on other sales. Mason actually prepared and presented insurance proposals to Mark in November 1984. The MONY policy became effective in September 1984, and thus the annual renewal date was September 1985. Mason's calendar had a "tickle date", to remind him to contact Mark in September 1985, at which time he submitted a similar proposal to Mark. A reasonable inference from this evidence is that at the time Mason submitted the proposals to Mark in 1984, Mason learned that Mark had already purchased the MONY policy. Mason, however, also knew that the MONY policy was subject to renewal in September 1985, and thus contacted Mark again at that time in order to replace the MONY policy with a policy from Capitol. The policies had the same face amount. Undisputed evidence established that 85 percent of Mason's business was selling replacement policies and that Mason filled out the application based on verbal answers from Mark. Moreover, there is no reason to believe that Mark would have lied about the fact that he was intending to replace the MONY policy.

In view of the blatant inconsistencies in Mason's testimony, the jury was free to disbelieve Mason's assertion that he had no knowledge as to replacement. Indeed, considering the evidence most favorably to Strother, the evidence supports a finding not only that Mason should have known about the replacement, but that he in fact did know about the replacement. In light of the foregoing evidence the jury's finding will not be disturbed.

---

[19]*State v. Black*, 100 Wn.2d 793, 802, 676 P.2d 963 (1984).

## TORT ACTION

■ We turn now to an analysis of the elements of Strother's tort action.[20] In an action for negligence the plaintiff must establish (1) a duty owed to her, (2) a breach of that duty, (3) a resulting injury, and (4) that the breach was the proximate cause of the injury.[21]

■ _Duty._ In the sale of a replacement policy the regulations place certain duties on the insurer and the insurer's agent. WAC 284-23-440[22] requires that where replacement is involved the agent shall deliver a replacement notice to the applicant. At the time of the replacement, in 1985, the form of that notice was prescribed by former WAC 284-23-500 and WAC 284-23-530.[23] A significant aspect of the agent's notice to the applicant pursuant to former WAC 284-23-500 is that the applicant must be told that "[y]ou should also recognize that a policy which has been in existence for a period of time may have certain advantages to you over a new policy." Former WAC 284-23-500. Such information communicated to Mark would almost surely have provoked a question, "what advantages might my existing policy have?"[24]

---

[20]_See Falk v. Keene Corp._, 113 Wn.2d 645, 659, 782 P.2d 974 (1989) ("An appellate court has inherent authority to consider issues which the parties have not raised if doing so is necessary to a proper decision.").

[21]_Hansen_, at 479.

[22]Former WAC 284-23-440 stated:
"(2) Where a replacement is involved, the agent shall:
"(a) Present to the applicant . . . 'Notice regarding replacement of life insurance' ".

[23]Former WAC 284-23-500 and WAC 284-23-530 set forth the exact contents of the notice to be issued to the applicant. A different but similar form is now required and set forth in WAC 284-23-485.

[24]We note that under WAC 284-23-485 the agent must now signify a belief that "the replacement of insurance involved in this transaction materially improves your position" and specify any "short or long term effects from the replacement that might be materially adverse". WAC 284-23-485.

Former WAC 284-23-450[25] prescribed the insurer's duties in regard to replacement, which in summary were that upon receiving an application for a replacement policy, the new insurer must notify the existing insurer of the proposed replacement.[26] This in turn triggers the opportunity for the existing insurer to furnish the insured with a policy summary for the existing life policy.[27] The regulations are specifically directed to one in Mark's position, the holder of a policy who is being solicited to cancel it and buy another policy. As such, the regulations impose a duty to the applicant on the insurer.

 Breach. Capitol is directly responsible for the performance of its own duty and is vicariously responsible for Mason's performance of his duties.[28] A finding that a person should have known imposes the same liability as if he knew.[29] Elementary rules of the law of principal and agent make Capitol legally responsible for the acts and knowledge of its agent Mason.[30] Indeed, this responsibility is not disputed.

---

[25]"Each replacing insurer shall:
" . . . .
"(3) Where a replacement is involved:
" . . . .
"(d) Send to the existing insurer a verified comparative information form . . .".

[26]These duties are now prescribed in WAC 284-23-455.

[27]*See* WAC 284-23-455(2)(c), which prescribes the procedure to be followed by an existing insurer in attempting to dissuade the policyholder from replacement.

[28]*See Olson v. Bankers Life Ins. Co.*, 63 Wn.2d 547, 551, 388 P.2d 136 (1964).

[29]*See* WAC 284-23-410. *See also Lutheran Day Care v. Snohomish Cy.*, 119 Wn.2d 91, 112, 829 P.2d 746 (1992) (under RCW 64.40.020(1) a county can be held liable for unlawful act if act "should reasonably have been known to have been unlawful . . ."); *Enterprise Timber, Inc. v. Washington Title Ins. Co.*, 76 Wn.2d 479, 483, 457 P.2d 600 (1969) ("One who has notice of facts sufficient to prompt a person of average prudence to inquire is deemed to have notice of all facts which reasonable inquiry would disclose.").

[30]*See Stevens v. Security Pac. Mortgage Corp.*, 53 Wn. App. 507, 519, 768 P.2d 1007 (knowledge of agent is imputed to the principal), *review denied*, 112 Wn.2d 1023 (1989).

238

██ Capitol argues that it could not comply with the applicable regulations because it did not know the name of the existing insurance carrier for Mark, and because it had no reason to know it was issuing a replacement policy. It overlooks the fact that it is charged with the knowledge of its agent. If an insurer knows that it is being asked to issue a replacement policy, but does not know the name of the existing insurer, it must decline to issue the policy until such time as it ascertains the existing insurer and is able to comply with its obligations under the regulations. Since it is undisputed that neither Mason nor Capitol complied with the applicable regulations, Capitol breached its duty to Mark.

Injury. It is undisputed that the Strothers were injured by replacing the MONY policy, which provided coverage for mountain climbing, with the Capitol policy which was voided upon Mark's death.

██ Proximate Cause. A breach of duty results in liability only when it is a proximate cause of damage to the plaintiff.[31] Except when reasonable minds cannot differ, proximate cause is an issue of fact for the jury.[32] In the case at bar the issue of proximate cause was never submitted to the jury. It may be likely that, had Mark been advised he would not be covered for a mountaineering death, he would not have allowed his existing policy with MONY to lapse and would not have bought Capitol's policy for a minor premium benefit. Such a switch deprived his wife of vital protection and was arguably a breach of his contractual obligation to Dr. Van Meter. However, we cannot assume proximate cause. Causation must be proved and found by the trier of the fact.

██ In this case proximate cause could possibly be established in one of two ways: (1) a showing of what MONY's response would have been if it had been notified as required by former WAC 284-23-450, and what Mark's response would have been to any resulting communication from MONY or its

---

[31]*Hansen*, at 479.

[32]*Petersen v. State*, 100 Wn.2d 421, 436, 671 P.2d 230 (1983).

agents, *or* (2) a showing of what Mark's response would have been to the notice issued to him by Mason as required by WAC 284-23-440. Although it is impossible to have direct evidence as to what Mark would have done, we do not consider the question to be so speculative as to defeat liability.[33] It is analogous to proving causation in products liability actions where the defendant is charged with failure to provide adequate warnings.[34] The issue here can properly be resolved by the trier of fact in light of all the surrounding circumstances.[35]

Damages. The amount of damages is not in issue. If Mark allowed his MONY policy to lapse as a proximate result of Capitol's breach of duty, Strother is entitled to recover the face amount of that policy.[36]

█ In summary we hold that a policyholder who has made or ratified material misrepresentations may not recover on the policy either by way of estoppel or public policy. However, if the insurer or the insurer's agent breaches a duty to the insured which results in loss of other policy coverage the insured may maintain an action for the damage proximately caused by that breach. In the case at bar the issue as to proximate causation must be resolved on retrial.

---

[33]We note that in *Tannenbaum* the court had no difficulty concluding that the replacing company's failure to supply the applicant with information regarding replacement resulted in harm to the applicant. *Tannenbaum*, at 105.

[34]*See Ayers v. Johnson & Johnson Baby Prods. Co.*, 117 Wn.2d 747, 754-55, 818 P.2d 1337 (1991) (holding that the plaintiffs had sufficiently established that had they been warned of the danger of inhaling baby oil they would have treated the product differently). The issue is also similar to determination of a testator's intent when an ambiguity appears on the face of her will. It is well established that evidence of extrinsic facts and surrounding circumstances is admissible to prove such intent. *In re Estate of Bergau*, 103 Wn.2d 431, 436, 693 P.2d 703 (1985).

[35]*Cf. Sanchez v. Haddix*, 95 Wn.2d 593, 599, 627 P.2d 1312 (1981) (circumstantial evidence may establish causation if it creates a reasonable certainty).

[36]Where the issue is not death coverage, as here, but adverse financial consequences from cancellation and purchase of a new policy, the damage issue would become a contested matter of fact.

## CONSUMER PROTECTION ACT

Strother assigns error to the trial court's conclusions of law 3, 4 and 5, regarding Strother's Consumer Protection Act claim.[37] In conclusions of law 3 and 4 the trial court concluded that Strother failed to establish a causal link between the claimed injury and unfair trade practices. In conclusion of law 5 the trial court concluded that Strother is precluded from asserting a Consumer Protection Act claim because Mark perpetrated a fraud.

Strother asserts that the trial court erred in ruling that her claim under the Consumer Protection Act is precluded by Mark's fraud. In *Mutual of Enumclaw Ins. Co. v. Cox*,[38] the Supreme Court ruled that a consumer who himself is guilty of fraud in the disputed transaction may not use the Consumer Protection Act to recover damages.[39] In that case, the plaintiff, in submitting a claim on his fire insurance, fraudulently listed items on his inventory list that had not been lost in the fire.[40] The plaintiff's actual loss, however, still exceeded the policy coverage. In addition to trying to

---

[37]Strother took no cross appeal from the order dismissing the Consumer Protection Act claim. RAP 5.1(d) requires that if a respondent seeks cross review, the respondent must file a notice of appeal within the time limits prescribed by RAP 5.2. At no time during pendency of this case has Strother filed a notice of appeal. Strother cites *Fraser v. Monroe*, 1 Wn. App. 14, 459 P.2d 64 (1969), in asserting that a notice of cross appeal is unnecessary because she is only asking that this court sustain the trial court's judgment. In *Fraser*, the respondent assigned error to a factual finding which was *inconsistent* with the trial court's judgment. This court held that the defendant was not required to file a notice of cross appeal in that it was only seeking to sustain the trial court's judgment. *Fraser*, at 15.

The case at bar is distinguishable from *Fraser*. In assigning error to the trial court's conclusions Strother is not seeking to merely sustain the trial court's judgment. Strother is asking this court to affirm the award on an alternate theory which was explicitly rejected by the trial court. As such, RAP 5.1(d) requires Strother to file a notice of appeal in order to assign error to the trial court's conclusions. Nonetheless, we will address the merits of the claim due to its precedential value.

[38]110 Wn.2d 643, 757 P.2d 499 (1988).

[39]*Mutual of Enumclaw*, at 652.

[40]*Mutual of Enumclaw*, at 648.

estop the insurer from voiding the policy, Cox brought a Consumer Protection Act claim alleging unfair practices in the processing of his insurance claim.

We find the case at bar distinguishable from *Mutual of Enumclaw*. The "fraud" in the case at bar is the misrepresentations which are imputed to Mark pursuant to *Hein v. Family Life Ins. Co.*, 60 Wn.2d 91, 376 P.2d 152 (1962). These misrepresentations would not have precluded coverage once the policy entered the incontestability stage after 2 years pursuant to RCW 48.23.050.[41] Most significantly, however, the alleged unfair practice in the case at bar preceded, and in fact likely *contributed* to, any misrepresentations on Mark's part. In other words, a jury might well find that Mark would not have allowed his MONY policy to lapse if Capitol had complied with the regulations, and hence Mark would have had no occasion to make any misrepresentations. In contrast, the fraud in *Mutual of Enumclaw* preceded any bad faith handling of the claim. It would contradict the purpose of the Consumer Protection Act to extend the rule of *Mutual of Enumclaw* to the case at bar.

Five elements are required to establish a private Consumer Protection Act claim pursuant to RCW 19.86: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) public interest impact, (4) injury to the plaintiff in his or her business or property, and (5) causation.[42]

The first element in a Consumer Protection Act claim is an "unfair or deceptive act or practice." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785, 719 P.2d 531 (1986). Strother urges us to find that Capitol's acts, or in this case failure to act, constitute a per se violation of the Consumer Protection Act based on RCW 48.30.010. We disagree. That statute recognizes that certain unfair or deceptive acts or practices will be expressly prohibited by the insurance code and that in addition, the

---

[41]"The policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its date of issue".

[42]*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

Insurance Commissioner may define other acts and practices to be unfair or deceptive.[43] Neither the Legislature nor the Insurance Commissioner has chosen to designate the acts with which we are here concerned as constituting unfair or deceptive conduct per se.[44] *Hangman* specifically requires that a designation as a per se violation be done by legislative authority and not by the judiciary.[45] Accordingly, a violation of WAC 284-23-440 or former WAC 284-23-450 is not a per se unfair or deceptive act or practice.

An unfair or deceptive act or practice may also be established by a showing that the act or practice has the capacity to deceive a substantial portion of the public.[46] Once the facts have been found by the trier of the fact, whether a particular act or practice is unfair or deceptive is a question of law.[47]

In the case at bar, it was established at trial that Capitol and Mason failed to issue the required replacement notices despite knowledge that replacement was involved and thus failed to comply with the regulations. The impetus behind the requirement for replacement notices is to guarantee that the insured is aware of the benefits she may be forfeiting by changing policies.[48] The regulations attempt to achieve this in two ways. One way is by giving the existing insurer, through

---

[43]*See* RCW 48.30.010(2).

[44]In contrast, WAC 284-30-330 defines 19 types of conduct which constitute unfair or deceptive trade practices. Violations of these regulations constitute per se unfair trade practices. *Industrial Indem. Co. of Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 923, 792 P.2d 520 (1990).

[45]*Hangman*, at 787.

[46]*Hangman*, at 785.

[47]*Potter v. Wilbur-Ellis Co.*, 62 Wn. App. 318, 327, 814 P.2d 670 (1991).

[48]*See* former WAC 284-23-400, which stated, in part,
"The purpose of this regulation is:
" . . . .
"(2) To protect the interests of life insurance policyowners . . . by:
"(a) Assuring that the policyowner receives information with which a decision can be made in his or her own best interest".

notification, an opportunity to present the insured with reasons not to replace the existing policy. The other way is notice issued to the insured from the agent of the replacing insurer which is designed to inform the insured of possible disadvantages resulting from replacement.

Knowingly failing to issue the required notices has the effect of depriving the insured of information which is necessary to make an educated decision as to replacing an existing policy. As such, it has the tendency to deceive a substantial portion of the public.[49] Indeed, the very existence of the regulations indicates a determination by the Insurance Commissioner that failure to provide this information tends to deceive the consumer and results in imprudent replacements.

The second element which must be established is that the act or practice occurred in the conduct of trade or commerce.[50] There is no question that the act occurred in the conduct of trade or commerce. Thus, Strother has established the first two elements, an unfair trade practice.

The third element of a Consumer Protection Act claim is a showing of public interest.[51] This element may be established per se with a showing of "a specific legislative declaration of public interest impact." *Hangman*, at 791. RCW 48.01.030 is such a specific declaration of public interest.[52] RCW 48.01-.030 is a broad pronouncement that unfair practices in the business of insurance meet the public interest requirement.[53] The adoption of specific regulations for replacement and the

---

[49]Although not addressed by the parties, we note that the fact that Capitol's violation of the regulation affected only Strother does not preclude a finding of an unfair trade practice. This action, or failure to act, as part of a standard sales approach has the capacity to deceive a substantial portion of the public, although in the case at bar it affected only one person. *See Potter*, at 327-28.

[50]*Hangman*, at 785.

[51]*Hangman*, at 787.

[52]*Hangman*, at 791.

[53]RCW 48.01.030 reads, in part, "The business of insurance is one affected by the public interest".

existence of RCW 48.30.180,[54] prohibiting "twisting", also demonstrate a public interest. Thus, Strother's establishment of a violation of the insurance regulations satisfies her burden of proof as to this third element.

The fourth element of a Consumer Protection Act claim is a showing that the plaintiff has suffered an injury.[55] There is no dispute in the case at bar that Strother suffered injury when her claim on her husband's life insurance policy was denied. Thus, this element has been established.

■ The fifth element is that a plaintiff must make a showing that there is a causal link between the unfair trade practice and the injury;[56] in other words, that the unfair trade practice was the proximate cause of the injury. No such finding has been made in the case at bar. The trial court did not submit this factual issue to the jury nor did it purport to resolve it as a factual issue in its own limited findings.[57] Rather, in conclusions of law 3 and 4, which may be treated as findings of fact,[58] the court determined that Strother did not establish the causation element.

---

[54]"No person shall by misrepresentations or by misleading comparisons, induce or tend to induce any insured to lapse, terminate, forfeit, surrender, retain, or convert any insurance policy."

[55]*Hangman*, at 792.

[56]*Hangman*, at 792-93.

[57]CR 49(a) provides that the court may require the jury to return only a special verdict, responding with special written findings on specific issues of fact, as was done here in regard to Mason's knowledge. While the decision as to whether to require a special verdict is within the discretion of the trial court, *Hawley v. Mellem*, 66 Wn.2d 765, 771, 405 P.2d 243 (1965), the rule requires that once the trial court has made the determination to submit special verdict forms, the court must submit all controlling factual issues. *See Duke v. Sun Oil Co.*, 320 F.2d 853, 865 (5th Cir. 1963) (interpreting the similar federal rule). Having chosen to submit a special verdict form to the jury, the trial court did not have discretion to save other factual determinations for itself. However, since the findings were in Capitol's favor, there is no prejudice from the error.

[58]*Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

 Having failed to take a cross appeal from the trial court's dismissal of the Consumer Protection Act claim, Strother is precluded from contesting these findings of fact although she purports to assign error to them. Moreover, Strother has failed to show that the findings are so contrary to the evidence that this court should reverse them. Having failed to seek a factual determination from the jury as to the causal connection between the unfair trade practice and Strother's injury, Strother may not rely on the consumer protection claim to affirm the judgment below, nor may she reassert it upon remand.[59]

## REMAND

 It is well settled that in cases where both liability and damages are at issue, error in the determination of one element may not require a retrial on both issues.[60] This is true of special verdicts as well as general verdicts.[61] In this case the jury found that Mason knew or should have known he was selling a replacement policy. Considerations of judicial economy strongly suggest that there is no necessity to retry this issue. Nor do we perceive any unfairness to Capitol in accepting the jury finding as the law of the case. As a matter of law, this finding constitutes a breach of Capitol's

---

[59]We note that Strother's inability to enforce the contract with Capitol would not have precluded her from asserting a claim under the Consumer Protection Act. It is well established that the right to recover damages under the Consumer Protection Act is completely independent of underlying contract rights. *See* *Keyes v. Bollinger*, 31 Wn. App. 286, 293, 640 P.2d 1077 (1982) (allowing Consumer Protection Act claim although plaintiff was found to have waived breach of contract claim).

[60]"Courts have the authority to limit issues on a new trial in those cases where it clearly appears that the original issues were distinct and separate from each other and that justice does not require the resubmission of the whole case to the jury." *Keegan v. Grant Cy. PUD 2*, 34 Wn. App. 274, 285, 661 P.2d 146 (1983). *See also Bauman v. Crawford*, 104 Wn.2d 241, 248-49, 704 P.2d 1181 (1985).

[61]*Bauman*, at 248; *Keegan*, at 284.

duty under the applicable regulations. The only issues that need to be tried on remand are the issues of proximate cause and any as yet undetermined issues that bear on Strother's right to recover under a negligence theory. Reversed and remanded for further proceedings consistent with this opinion.

GROSSE, C.J., and PEKELIS, J., concur.

Review granted at 121 Wn.2d 1008 (1993).