2 P.3d 1029 (2000)
101 Wash.App. 323
Sharon ANDERSON, Appellant,
v.
STATE FARM MUTUAL INSURANCE COMPANY, Respondent.
No. 44597-9-I.
Court of Appeals of Washington, Division 1.
June 26, 2000.
Reconsideration Denied August 3, 2000.
*1031 Kevin M. Winters, Roger Edwin Hawkes, Shoreline, for Appellant.
Gailann Y. Stargardter, Marilee C. Erickson, Reed McClure, Seattle, for Respondent.
*1030 BECKER, J.
This decision reverses in part an order dismissing, on summary judgment, Sharon Anderson's suit against State Farm for bad faith and Consumer Protection Act violations. The suit arose from State Farm's failure to advise Anderson of underinsured motorist (UIM) coverage, and its handling of her UIM claim once she made it. We hold, as a matter of law, that an insurer commits bad faith and engages in an unfair claims settlement practice when it fails to disclose the existence of UIM coverage to an injured insured whose damages are substantial and whose account of the accident plausibly indicates another driver is at fault.
Anderson's allegation that State Farm made an unreasonably low settlement offer *1032 raises issues for the trier of fact. Her claims of unreasonable investigation and delay in payment after arbitration were properly dismissed as unsupported in the record.

FACTS
Sharon Anderson was driving her Honda south on Interstate 5 on a Monday afternoon in March, 1995. With her was her husband, Charles Buckner. Anderson lost control of the car and crashed into a cement barrier paralleling the right side of the freeway. The accident occurred in Mountlake Terrace, two miles south of the 236th Street exit. Anderson went to the hospital with a fractured leg and other injuries.
How the accident occurred, and what caused it, are matters of dispute. According to Buckner's statements at the time, Anderson was driving in the express lane. As she began to move over to the right to the exit lane, a green car also moved over and cut them off. When they moved into the far right exit lane the same car again moved in front of them causing Anderson to swerve to the right and hit the barrier.
Ten days after the accident, Anderson gave a statement to State Farm, the insurer of her Honda. Anderson said she and Buckner were in the carpool lane with another car in front of them. Neither car was speeding. She attempted to move to the far right lane. Each time she changed lanes the other car moved in front of her, cutting her off. She finally moved into the far right exit lane, and the other car remained in the lane next to her, on her left. Then a "big old white car" changed lanes in front of the other car and into her lane. This event caused her to veer sharply to the right and lose control of her car.
State Farm obtained the police report of the accident. The police report describes a version of the accident similar to Anderson's, but there is no information in the record as to the source of the description. The police report also contains the handwritten statement of a witness, Philip Benedict, taken at the scene of the accident. In it, Benedict states that the Honda and a Camaro were "zig-zagging" in the two right lanes at high speed, passing each other on the right and left sides and cutting back and forth in front of each other. He said they were going much faster than the main body of traffic. He said that a "car ahead of the speeders moved into the right-hand traffic lane," then the Camaro slowed quickly and the Honda had "no place to go." Benedict gave a similar account to State Farm.
Having obtained the various statements, a State Farm claims representative sent a letter to Anderson explaining that her benefits under the policy included coverage for medical expenses and lost wages, each limited to $10,000. State Farm's letter did not mention that Anderson's policy also included UIM coverage, potentially available if the accident was caused by another driver.
In November 1995, eight months after the accident, Anderson learned about the possibility of UIM coverage from an attorney she happened to meet. She hired counsel and submitted a UIM claim. State Farm opened a claim file in January 1996. A different claims representative, after reviewing the file, located the driver of the Camaro, 18-year-old Jason Gipe. In a statement given to State Farm at this time, Gipe said that Anderson's car was tailgating 10 to 15 feet behind his car. Both cars, he said, were traveling at the speed limit. Gipe said he moved one lane at a time to the right as he was preparing to exit. Anderson's car also moved to the right. According to Gipe, once he was in the far right lane, Anderson moved over onto the shoulder of the highway. He said Anderson passed him on the shoulder. Then she tried to reenter the right hand lane, but almost hit another car, slammed on her brakes and veered into the cement barrier.
Anderson demanded the UIM policy limits of $100,000 from State Farm in March 1996. The claims representative assessed Anderson's damages as between $150,000 to $200,000, but concluded that the claim had little value because Anderson was, in his estimation, 80-100 percent at fault. In July 1996, State Farm offered Anderson $7,500 in settlement. Two months later, State Farm obtained a declaration from witness Philip Benedict. Benedict now said that the accident *1033 occurred when the Honda tried to pass the Camaro on the right shoulder of the highway. He said a green car moved into the right lane while the Honda was on the shoulder, but "did not cut off the Honda." Based on this declaration, State Farm informed Anderson that she had no UIM claim because she was the sole cause of the accident.
Anderson wrote to State Farm demanding UIM arbitration. The parties agreed to arbitrate liability only. In a decision issued in August 1997, the arbitrator concluded that "Anderson was 25% negligent and State Farm is 75% liable" for the accident. Five months later, State Farm paid Anderson the policy limits of $100,000.
Anderson then filed suit against State Farm alleging bad faith and violations of the Consumer Protection Act. Anderson alleged that State Farm violated several regulations contained in WAC 284-30, governing trade practices in the insurance industry. The court heard cross motions for summary judgment and granted summary judgment to State Farm. Anderson appeals.
In reviewing summary judgment, this court evaluates the matter de novo, engaging in the same inquiry as the trial court. Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993). The appellate court considers the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c). Although there is no appeal as of right from the denial of a motion for summary judgment, we may exercise our discretion and rule on a denied motion for summary judgment to serve the interest of judicial economy where there are no genuine issues of material fact. See Waller v. State, 64 Wash.App. 318, 338, 824 P.2d 1225, review denied, 119 Wash.2d 1014, 833 P.2d 1390 (1992).
The tort of bad faith has been defined as a breach of the obligation to deal fairly with an insured, giving equal consideration to the insured's interests. Tank v. State Farm Fire & Casualty Co., 105 Wash.2d 381, 385-86, 715 P.2d 1133 (1986). The duty of good faith owed by an insurer to its insured is statutory. "The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." RCW 48.01.030. The insurer's fiduciary duty to act in good faith is fairly broad and may be breached by conduct short of intentional bad faith or fraud, Industrial Indem. Co. of the Northwest, Inc. v. Kallevig, 114 Wash.2d 907, 916-917, 792 P.2d 520 (1990), although not by a good faith mistake, Coventry Associates v. American States Ins. Co., 136 Wash.2d 269, 280, 961 P.2d 933 (1998). An insurer acts in bad faith when it overemphasizes its own interests. Coventry, 136 Wash.2d at 280, 961 P.2d 933. The determinative question is reasonableness of the insurer's actions in light of all the facts and circumstances of the case. Kallevig, 114 Wash.2d at 920, 792 P.2d 520.
A Consumer Protection Act claim in the insurance context requires (1) an unfair or deceptive practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and (5) which injury is causally linked to the unfair or deceptive act. Kallevig, 114 Wash.2d at 920-921, 792 P.2d 520.
The public interest element may be established by showing a violation of a statute containing a legislative declaration of public interest impact. Hangman Ridge Training Stables, Inc., v. Safeco Title Ins. Co., 105 Wash.2d 778, 791, 719 P.2d 531 (1986). Consumer Protection Act claims alleging unfair insurance claims practices meet the public interest element because RCW 48.01.030 declares that the "business of insurance is one affected by the public interest".
As to the element of damage, only injuries to business or property are recoverable in a Consumer Protection Act claim. Kallevig, 114 Wash.2d at 920, 792 P.2d 520.

*1034 FAILURE TO DISCLOSE UIM COVERAGE
Anderson's first claim is for damages caused by State Farm's failure to disclose her UIM coverage when she first contacted them to claim benefits under her policy. Her claim is based on an insurance regulation that requires disclosure of pertinent coverages when a claim is presented:
Misrepresentation of policy provisions. (1) No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented.
WAC 284-30-350.
State Farm contends Anderson's UIM coverage was not pertinent because the available evidence indicated that Anderson's own negligent driving was the only cause of the accident.
State Farm takes an impermissibly self-serving view of the available evidence. Statements taken from Anderson and Buckner, ignored by State Farm in its recitation of the facts, indicated that Anderson was driving carefully. As Anderson described the accident, the Camaro and a "phantom" white car forced her off the road as a result of their negligent driving.
Nothing in the record shows that it was reasonable for State Farm to accept as true the account of the accident given by Benedict and to disregard as incredible the account given by its own insured. Anderson's version of the accident was not implausible. Her damages were substantial, potentially far exceeding any other available coverage. Thus, there was no basis at this initial stage for State Farm to determine that Anderson's UIM coverage was not pertinent to her claim. State Farm's failure to advise Anderson of her coverage violated WAC 284-30-350 and constituted bad faith as a matter of law. The trial court erred not only in granting State Farm's motion for summary judgment on this alleged breach of its duty of good faith, but also in denying Anderson's motion.
State Farm's failure to disclose UIM coverage also establishes, as a matter of law, an unfair insurance claims practice actionable under the Consumer Protection Act. An insurance statute, RCW 48.30.010, prohibits insurers from engaging in unfair or deceptive claims practices. A regulatory chapter of the Washington Administrative Code entitled "Trade Practices", WAC 284-30, was promulgated under the authority of RCW 48.30.010. The purpose of WAC 284-30-300 through XXX-XX-XXX is to "define certain minimum standards which, if violated with such frequency as to indicate a general business practice, will be deemed to constitute unfair claims settlement practices." WAC 284-30-300. In Kallevig, where the alleged Consumer Protection Act violation was based on WAC 284-30-330, the Supreme Court rejected the argument that WAC 284-30-300 precludes Consumer Protection Act liability unless there are multiple violations. A single violation of any of the provisions under XXX-XX-XXX constitutes a per se unfair or deceptive practice for purposes of a Consumer Protection Act violation:
we find that a first party insured may bring an action for violation of the CPA based upon a violation of RCW 48.30.010 resulting from a single violation of WAC 284-30-330. The significance of our departure from the analysis of the Court of Appeals is that any violation that would constitute an unfair trade practice under WAC 284-30-330 is an unfair trade practice under RCW 48.30.010 regardless of whether it would take more than a single violation of WAC 284-30-330 for the Insurance Commissioner to exercise any administrative powers to seek corrective action or penalties against the insurer.
Kallevig, 114 Wash.2d at 924, 792 P.2d 520.
The regulation requiring full disclosure of pertinent benefits, WAC 284-30-350, is not one of the nineteen listed practices under WAC 284-30-330. State Farm accordingly contends a violation of WAC 284-30-350 is not a per se unfair trade practice. But WAC 284-30-350 and WAC 284-30-330 are under the same subheading, "Unfair Claims Settlement Practices"; they were both adopted with the purpose expressed in WAC 284-30-300; and most importantly, in view of Kallevig, they implement the same statute, RCW *1035 48.30.010. Indeed, this court has already held that a violation of WAC 284-30-350 is also a violation of RCW 48.30.010, and is therefore a per se unfair trade practice. Van Noy v. State Farm, 98 Wash.App. 487, 496, 983 P.2d 1129 (1999), review granted, 139 Wash.2d 1022, 994 P.2d 849 (2000); see also Hayden v. Mutual of Enumclaw Ins. Co., 141 Wash.2d 55, 1 P.3d 1167 (2000). We conclude that establishing a violation of WAC 284-30-350 satisfies the unfair practice element of a Consumer Protection Act claim.
A different resolution is not dictated by a case relied on by State Farm, Strother v. Capitol Bankers Life Ins. Co., 68 Wash. App. 224, 241-242, 842 P.2d 504 (1992), rev'd on other grounds, Ellis v. William Penn Life Assur. Co., 124 Wash.2d 1, 873 P.2d 1185 (1994). Strother held that a certain provision under the WAC chapter regulating life insurance is not a per se deceptive practice, and noted that it is the province of the Legislature, rather than the judiciary, to designate which acts are per se unfair or deceptive acts for purposes of the Consumer Protection Act. Strother, 68 Wash.App. at 242, 842 P.2d 504. Our result here is entirely consistent with Strother, because we conclude that the practices listed under the "Unfair Claims Settlement Practices" section of the WAC are legislatively designated by authority of RCW 48.30.010.
State Farm argues Anderson has not proved damage or injury to property because her recovery in the arbitration ultimately made her whole despite the 10-month delay before State Farm opened a UIM file. Anderson, however, alleges loss of the interest on the value of her eventual recovery over that ten-month period. She seeks recovery of the attorney fees and costs she expended in initiating the claim. She also claims to have experienced financial penalties attributable to the delay because she and her husband were short of funds to pay bills associated with the accident. Such evidence is sufficient to raise an issue of fact as to economic harm. Moreover, because bad faith is a tort, a plaintiff is not limited to economic damages. Coventry, 136 Wash.2d at 284-285, 961 P.2d 933. Anderson alleges that she and her husband suffered emotional distress due to the financial difficulties. On remand she is entitled to a trial to prove the amount of damages, both financial and emotional, caused by State Farm's bad faith failure to disclose a pertinent coverage and the resulting delay in obtaining coverage.
In summary, Anderson has established as a matter of law the elements of a bad faith claim and a Consumer Protection Act claim arising from State Farm's failure to disclose the UIM coverage. She is entitled to trial to determine the amount of damages caused by the unnecessary ten-month delay before she knew a UIM claim was possible.

INVESTIGATION
Anderson's next claim addresses the period of time after she filed her UIM claim. She alleges that State Farm denied her claim without first having conducted a reasonable investigation as mandated by WAC 284-30-330(4). According to this regulation, "Refusing to pay claims without conducting a reasonable investigation" is an unfair or deceptive act and claims settlement practice.
Upon receiving Anderson's claim right after the accident, State Farm ordered the police report, attempted to contact the officer who wrote the report, photographed the car, and took statements from Anderson, Buckner and Benedict. Later, after being notified of Anderson's UIM claim, State Farm obtained a statement from Gipe, the driver of the Camaro, reviewed Anderson's medical bills and sought a declaration from Benedict. State Farm asserts that its investigation was more than adequate, while Anderson asserts that State Farm plainly did little to investigate. She faults State Farm for failing to perform certain tests such as a crash impact analysis or an accident reconstruction analysis, and failing to interview certain witnesses.
The record does not support Anderson's argument that State Farm's omissions caused delay in the settlement of her claim and caused her to bear the expense of conducting her own investigation. There is no information about what the tests and interviews would have shown. A finding that State Farm would have offered to pay the claim sooner if it had done a more thorough *1036 investigation would be based on speculation, not evidence.
This case is unlike Kallevig, where the claimant gathered expert testimony that destroyed, point by point, the insurer's theory that the claimant had caused his own damages. Kallevig, 114 Wash.2d at 918, 792 P.2d 520. So far as can be seen from the record on summary judgment, the delay in payment and the need for Anderson to conduct her own investigation were caused by State Farm's self-serving evaluation of the evidence at hand rather than by State Farm's failure to gather more evidence. The facts of the investigations conducted by State Farm and by Anderson may be pertinent to Anderson's claims arising from other regulations. But she cannot maintain a Consumer Protection Act or bad faith claim based on the WAC provision that mandates a reasonable investigation before refusing to pay claims. Those claims were properly dismissed on summary judgment.

UNFAIR SETTLEMENT OFFERS
Anderson's next claim also addresses the period of time after she submitted her claim. She alleges that State Farm should have responded to her claim by making a reasonable offer of settlement instead of forcing her into arbitration. In July of 1996, State Farm offered Anderson $7,500 to settle her UIM claim. Two months later, after receiving Benedict's declaration, State Farm told Anderson she had no UIM claim because she was 100 percent at fault. The arbitration decision in August 1997 fixed Anderson's liability at only 25 percent. As a result, State Farm paid her the policy limit of $100,000.
This claim is based on WAC 284-30-330(7) which provides that it is an unfair or deceptive act to compel insureds "to institute or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings." In Keller v. Allstate, 81 Wash.App. 624, 915 P.2d 1140 (1996), this court held that the difference in the amount of the offer and the amount of the eventual settlement does not, by itself, show that the insurer acted in bad faith or engaged in an unfair practice. Keller, 81 Wash.App. at 633, 915 P.2d 1140. Rather, the issue turns on whether the insurer had reasonable justification for its low settlement offer. Keller, 81 Wash.App. at 634-635, 915 P.2d 1140. State Farm relies on Keller and argues that its settlement position was justified because there was a reasonable basis to dispute liability.
The issue in Keller was the sufficiency of the evidence to support a jury verdict in favor of the insurer. In this case, as in Keller, the evidence is sufficient to support a verdict in favor of State Farm if the case does go to a finder of fact. But it is also sufficient to support a verdict in favor of Anderson. Unlike Keller, this case is in the posture of having been decided on summary judgment rather than after a full trial. Based on the large disparity between State Farm's offers and the ultimate result, a jury could find that State Farm forced Anderson into arbitration by making unreasonably low offers.
The ultimate issue of the reasonableness of the offer is for the finder of fact to determine. We reverse the trial court's order of summary judgment on this issue and remand for trial. At trial, a finding that State Farm violated the regulation will support both the bad faith claim and the Consumer Protection Act claim because the WAC classifies an unreasonably low offer as an unfair claims settlement practice.

PAYMENT DELAY
Anderson's last claim addresses the delay in payment following the arbitration. The arbitration decision assigned 75 percent of the liability for the accident to State Farm. Sixteen weeks later, after obtaining an independent medical evaluation of Anderson, State Farm paid the policy limits of $100,000. Anderson claims the delay was unreasonable because her damages clearly exceeded the policy limits.
Anderson was in the hospital following the accident. She suffered a compound leg fracture, broken thumb and an injury to her lip. She underwent several surgeries. She incurred *1037 medical bills in excess of $42,000. Her husband, a contractor, lost work because of the constant care she required. Although she is now able to walk without assistance, one leg is slightly shorter than the other and she is unable to continue in her former occupation as a waitress and bartender. She argues that State Farm should have paid the limits of $100,000 immediately after the arbitration because her damages clearly exceeded the policy limits.
State Farm does not argue against the existence of a duty to pay a claim promptly once it is clear that the damages exceed the policy limit. State Farm argues that it was justified in taking extra time to investigate the exact amount of damages before making payment. The reason for the delay was to accommodate State Farm's desire to obtain an independent medical examination.
An insurer violates its duty to act in good faith when it acts without reasonable justification. Kallevig, 114 Wash.2d at 917, 792 P.2d 520. To support her claim that the delay was unreasonable, Anderson points to evidence in the claims file showing that before the arbitration, State Farm had already assessed her damages as being between $150,000 to $200,000. However, this assessment was based on information provided by Anderson. At the time of arbitration, State Farm had already paid approximately $25,000 under the medical benefits portion of the policy, and the arbitrator's decision assessed Anderson's liability at 25 percent. Based on these figures, Anderson's total damages had to be approximately $160,000 or more before payment of the policy limit ($100,000) was called for. A jury could not conclude that State Farm was unreasonable to insist on the independent medical examination to be assured that Anderson's damages were as extensive as she claimed.
Anderson contends State Farm had ample time to schedule the medical examination and make its own evaluation of her damages before the arbitration. But the arbitration, by agreement of the parties, resolved liability only, not damages. When an arbitration is bifurcated in this manner by agreement, it cannot be viewed as unreasonable for the insurer to await the outcome of the liability phase before committing resources to evaluation of damages. We affirm the order of summary judgment on this claim.

ATTORNEY FEES
Anderson incurred over $30,000 in legal fees in order to secure the $100,000 UIM payment. She argues that she is entitled to attorney fees under Olympic Steamship Co., Inc. v. Centennial Ins. Co., 117 Wash.2d 37, 53, 811 P.2d 673 (1991). But Olympic Steamship is not applicable where the controversy is over the amount of, or denial of, a claim. Dayton v. Farmers Insurance Group, 124 Wash.2d 277, 280, 876 P.2d 896 (1994). The present dispute is over the denial of a claim and the amount of the claim; State Farm did not deny the existence of coverage. Anderson relies on Gerken v. Mutual of Enumclaw Ins. Co., 74 Wash.App. 220, 872 P.2d 1108, review denied, 125 Wash.2d 1005, 886 P.2d 1134 (1994), a case that was decided prior to Dayton and cannot be reconciled with it. See also McGreevy v. Oregon Mutual Ins. Co., 128 Wash.2d 26, 904 P.2d 731 (1995). An award of attorney fees under Olympic Steamship is not appropriate.
Anderson also seeks the exceptional remedy of damages above policy limits as a deterrent to future acts of bad faith and to ensure that State Farm pays more as the result of its breaches in this case than if it had acted in good faith. We reject Anderson's request for an exceptional remedy, for which she cites no precedent. The extra-contractual remedies of Consumer Protection Act attorney fees and damages for emotional distress should serve as a sufficient disincentive to future bad faith conduct.
As discussed above, Anderson has already prevailed on her Consumer Protection Act claim for failure to disclose UIM coverage; only the amount of damages remains to be determined on remand. Her claim based on State Farm's settlement offer is remanded for trial. Once these matters are resolved, the trial court will make an appropriate award of Consumer Protection Act attorney fees for work done in the trial court. The trial court is also directed to include in its award of Consumer Protection Act attorney *1038 fees an award of fees and costs for this appeal.

EXPERT TESTIMONY
At the summary judgment hearing, Anderson moved to strike portions of State Farm's expert's declaration on the basis that the expert was not an experienced claims adjuster, and had improperly offered legal analysis on the Olympic Steamship issue.
State Farm's expert had considerable pertinent experience in insurance litigation. His lack of experience as a claims adjuster goes to the weight of his testimony rather than its admissibility. The submission of legal analysis is irrelevant because the trial court, and this court, decide the Olympic Steamship issue as a matter of law, not as a matter of fact. Accordingly, it is unnecessary to disturb the court's ruling.

CONCLUSION
The order of summary judgment is reversed in part and affirmed in part. The trial court is directed to enter partial summary judgment for Anderson establishing that State Farm acted in bad faith, and violated the Consumer Protection Act, when it failed to advise her that her benefits included UIM coverage. The amount of damages caused by State Farm's failure to disclose remains to be determined at trial. Anderson may also try all elements of her bad faith and Consumer Protection Act claims alleging an unreasonably low settlement offer. Summary judgment in favor of State Farm is affirmed as to Anderson's claims of unreasonable investigation and delay in payment after arbitration. Attorney fees on appeal will abide the result.
Reversed in part and affirmed in part.
COLEMAN, J., and BAKER, C.J., concur.