# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CHRISTOPHER NELSON, a person; )
REBECCA WIRTEL, a person; and ALLI )
NELSON, a minor, )

               Appellants, )

             v. )

GEICO GENERAL INSURANCE )
COMPANY, an insurance company, )

             Respondent. )
)

No. 72632-3-I

DIVISION ONE

UNPUBLISHED

FILED: January 11, 2016

Cox, J. — Christopher Nelson, Rebecca Wirtel, and Alli Nelson, their minor child (collectively "the insureds"), appeal summary judgment and related orders that dismiss this action against Geico General Insurance Company. Because there are genuine issues of material fact for trial, we reverse and remand for further proceedings.

In May 2011, Alli[1] suffered a severe foot injury. She was walking on the sidewalk in Seattle with her mother when an SUV driven by someone fleeing

---

[1] We adopt the insureds' naming conventions.

from police struck her. Alli's injuries cost more than $200,000 in medical treatment.

Alli's parents, Rebecca and Chris, each had an insurance policy issued by Geico. Each policy contained both personal injury protection (PIP) and underinsured motorist (UIM) benefits. Alli is also an insured under each policy.

It appears the parents were initially unaware that these two policies might provide PIP and UIM benefits for their daughter's injuries. Upon learning of this possibility from the Washington State Crime Victim Compensation Program, Chris notified Geico of the injury in August 2011. This was four months after the accident.

Chris and Rebecca agreed that he would manage Alli's insurance claims under both policies. For example, when Rebecca received calls from Geico, she referred the caller to Chris.

Shortly after Chris reported the accident, Geico began making a series of payments under the PIP provisions of both policies, eventually exhausting the PIP coverages. It is undisputed that Geico made no UIM payments before the insureds commenced this litigation.

Geico claims that in September 2012, it discussed settlement of the UIM coverages with Chris. Chris testified in his declaration opposing summary judgment that Geico never notified him of such settlement offer. He also testified that Geico never explained that Alli was eligible for the UIM coverages under the policies:

> At no time was I ever notified of any settlement offer or given
> any opportunity to accept a payment amount from Geico for our

2

uninsured motorist coverage. It was my understanding that Alli was covered under the Personal Injury Protection (PIP), which paid medical expenses, and Geico never told me that there were additional funds available under the policy. Only after hiring [our attorney] did we learn that there was additional money available under another part of the policy. I did not learn of any settlement offer until after we had retained [our attorney].[2]

In May 2013, the insureds hired counsel for this action. Between June and August 2013, their counsel learned details concerning the UIM coverages under the policies through correspondence with Geico.

In October 2013, counsel gave written notice to Geico of an Insurance Fair Conduct Act (IFCA) violation. This notice alleged that Geico had failed to timely pay the full benefits owed under the policies and violated insurance regulations.

The parties differed on the amount of the full UIM benefits payable under both policies. The insureds believed Alli should recover $25,000 under each policy for a total of $50,000. Geico disagreed, maintaining that the terms of the UIM policies prevented "stacking" of UIM benefits. Accordingly, the company took the position that the total UIM amount payable to Alli was $25,000, not $50,000. Geico did not make any payment of UIM benefits before this action's commencement.

In November 2013, the insureds commenced this action. Their claims included breach of contract, bad faith, violations of the Insurance Fair Conduct Act (IFCA), and violations of the Consumer Protection Act (CPA). After the

---

[2] Clerk's Papers at 206.

3

insureds commenced this action, Geico paid the undisputed $25,000 in UIM benefits.

Geico moved for partial summary judgment on the breach of contract claim. It argued this as a coverage issue. Specifically, Geico argued that the "anti-stacking" provision of the two policies prevented Alli from receiving the sum of both $25,000 maximums. The court granted partial summary judgment to Geico on this basis. The insureds do not appeal this order.

Geico then moved for partial summary judgment on the insureds' bad faith, IFCA, and CPA claims. The court partially granted this motion, dismissing their bad faith and IFCA claims. In its denial of the insureds' reconsideration motion, the court explained the basis of its decision. The court determined that the insureds had failed to present evidence that Geico failed to promptly investigate their claim. The court also ruled that even assuming Geico had violated other insurance regulations, the insureds had failed to produce evidence showing that they had suffered damages.

Subsequently, the court denied Geico's motion for partial summary judgment on the CPA claim. The court ruled that the insureds were entitled to argue to the jury that Geico had failed to make a prompt settlement offer, causing them emotional distress. Thereafter, on Geico's motion for clarification of this decision, the court changed its initial ruling. Specifically, it dismissed the insureds' CPA claim, determining that they had not produced evidence of damages.

The insureds appeal.

4

## BAD FAITH, CPA & IFCA CLAIMS

The insureds argue that Geico acted in bad faith and violated the CPA and IFCA by violating certain insurance regulations. We hold that there are genuine issues of material fact for trial.

In a summary judgment motion, the moving party bears the initial burden of showing the absence of a genuine issue of material fact.[3] If the moving party is a defendant and meets this initial showing, then the inquiry shifts to the nonmoving party.[4] If the nonmoving party fails to make a showing sufficient to establish the existence of a genuine issue of material fact, then the trial court should grant the motion.[5] In making this responsive showing, the nonmoving party cannot rely on allegations in its pleadings.[6] CR 56(e) requires that the response, "'by affidavits or as otherwise provided in [CR 56], must set forth specific facts showing that there is a genuine issue for trial.'"[7]

At this point, the court considers the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[8]

---

[3] Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

[4] Id.

[5] Id.

[6] Id.

[7] Id. at 225-26 (quoting CR 56(e)).

[8] Id. at 226.

This court reviews de novo summary judgment decisions, applying the same standards as the trial court.[9]

An insurer commits bad faith and engages in unfair practices as a matter of law "when it fails to disclose the existence of UIM coverage to an injured insured whose damages are substantial and whose account of the accident plausibly indicates another driver is at fault."[10]

Bad faith is a tort "defined as a breach of the obligation to deal fairly with an insured [and to] giv[e] equal consideration to the insured's interests."[11]

A CPA claim requires "(1) an unfair or deceptive practice, (2) in trade or commerce, (3) that impacts the public interest, (4) which causes injury to the party in his business or property, and (5) which injury is causally linked to the unfair or deceptive act."[12]

Under RCW 48.01.030, insurance affects the public interest. RCW 48.30.010 authorizes the insurance commissioner to promulgate regulations defining certain practices as unfair or deceptive.[13]

---

[9] Wash. Fed. v. Harvey, 182 Wn.2d 335, 339, 340 P.3d 846 (2015).

[10] Anderson v. State Farm Mut. Ins. Co., 101 Wn. App. 323, 326, 2 P.3d 1029 (2000).

[11] Id. at 329.

[12] Id. at 330.

[13] RCW 48.30.010(2).

*Violations of Insurance Regulations*

The insureds argue that Geico violated one or more insurance regulations. We hold that there are genuine issues of material fact whether Geico violated insurance regulations.

WAC 284-30-350 is one of several insurance regulations on unfair practices. It provides "No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."[14] Violating this regulation is a per se deceptive act under the CPA.[15]

Anderson v. State Farm Mutual Insurance Co. is our starting point to address whether Geico is liable for bad faith and violation of the CPA.[16] In that case, Sharon Anderson brought CPA and bad faith claims against State Farm.[17] Anderson argued that State Farm had failed to advise her of the UIM coverage available under her policy.[18]

Anderson suffered an injury in a car accident.[19] The accident's cause was unclear.[20] Anderson and her husband gave statements indicating that the

_____

[14] WAC 284-30-350(1).

[15] Anderson, 101 Wn. App. at 332.

[16] 101 Wn. App. 323, 2 P.3d 1029 (2000).

[17] Id. at 326.

[18] Id.

[19] Id.

[20] Id. at 326-27.

accident was the fault of another driver.[21] But other witnesses' statements indicated that Anderson "was the sole cause of the accident."[22]

State Farm obtained a police report and the statements previously described.[23] State Farm informed Anderson "that her benefits under the policy included coverage for medical expenses and lost wages, each limited to $10,000."[24] But State Farm "did not mention that Anderson's policy also included UIM coverage, potentially available if the accident was caused by another driver."[25]

"[E]ight months after the accident, Anderson learned about the possibility of UIM coverage from an attorney she happened to meet."[26] After UIM arbitration, State Farm paid Anderson the UIM policy limits.[27] Afterwards, Anderson sued State Farm, alleging violations of several insurance regulations.[28]

On appeal, this court "h[e]ld, as a matter of law, that an insurer commits bad faith and engages in an unfair claims settlement practice when it fails to

---

[21] Id.

[22] Id. at 328.

[23] Id. at 327.

[24] Id.

[25] Id.

[26] Id. at 327-28.

[27] Id. at 328.

[28] Id.

disclose the existence of UIM coverage to an injured insured whose damages are substantial and whose account of the accident plausibly indicates another driver is at fault."[29]

This court held that it was unreasonable for State Farm to determine that UIM coverage did not apply under Anderson's version of the accident.[30] And her injuries were severe, "potentially far exceeding any other available coverage."[31] Thus, State Farm violated WAC 284-30-350 by failing to inform Anderson of the UIM coverage potentially available under her policy.[32] Accordingly, Anderson was entitled to summary judgment on her bad faith claim.[33] Further, this violation of WAC 284-30-350 also established a CPA violation.[34]

Here, there is no dispute that Alli suffered substantial injuries to her foot when an apparently uninsured driver of a SUV evading police pursuit struck her on a sidewalk. There is also no dispute that her medical expenses far exceeded the UIM and PIP limits of the two policies under which she was insured by Geico. Just as in Anderson, her injuries "potentially far exceed[ed] any other available coverage."[35] Upon Chris making a claim on his daughter's behalf, Geico began

---

[29] Id. at 326.

[30] Id. at 331.

[31] Id.

[32] Id.

[33] Id.

[34] Id. at 332.

[35] Id. at 331.

paying PIP benefits for her injuries. Thus, there is no question that she is an insured under each policy.

Thus, the question is whether Geico fulfilled its duty under WAC 284-30-350 to disclose to the insureds all benefits under the policies. Specifically, between the report of the accident in August 2011 and September 2012, did Geico disclose to the insureds the UIM benefits under the policies at issue?

Geico argues that the insureds "were always aware that they were pursuing a claim for [Alli's] injuries under the UIM coverage of both policies."[36] Not so, on this record.

Chris testified by declaration, "It was my understanding that Alli was covered under the Personal Injury Protection (PIP), which paid medical expenses, and Geico never told me that there were additional funds available under the policy."[37]

Geico relies on Chris's statement that the Washington State Crime Victims Compensation Program notified him of the "right to utilize our uninsured motorist insurance on both of our Geico car policies."[38] That reliance is misplaced.

Chris's testimony by declaration establishes that he was informed by a third party of *possible* UIM coverage under the Geico policies. It does not say Geico disclosed this to him. The plain words of WAC 284-30-350 place the duty

---

[36] Brief of Respondent Geico General Insurance Company at 26.

[37] Clerk's Papers at 206.

[38] Clerk's Papers at 205-06.

on the insurer "to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."[39] It is not material whether a third party had previously informed the insureds that such coverage *might* be available. If that were the test, the regulation would say so.

Our examination of the record before the trial court at the time of summary judgment fails to reveal whether Geico disclosed to the insureds the UIM benefits under the policies prior to September 2012. This is the date on which Geico alleges that it discussed settlement of the UIM benefits with the insureds. And by stating this date, we do not decide whether, as the insureds argue, that there was no disclosure of these benefits until an even later date. That is a matter to be decided at trial.

In any event, Geico's reliance on September 2012 does not obviate the need to address whether it failed in its duty to disclose these benefits at an earlier date, one following the report of the accident in August 2011. For example, it is unclear whether it disclosed UIM benefits when the PIP benefits were discussed and payments for this benefit began. In our view, this would have been the natural time to also discuss UIM benefits. But the briefing below does not adequately address this question.

In its briefing on appeal, Geico again fails to identify what it did to disclose the UIM benefits after the claim was made in August 2011 and before September

---

[39] WAC 284-30-350(1).

11

2012. For the first time at oral argument of this case before this court, Geico attempted to address this issue by citing the record on appeal.

Specifically, Geico cited to its claim note under Chris's policy that appears to have been made on September 22, 2011. The heading for this note indicates it is part of the "PIP Adjuster" notes. The note indicates that Geico was told that Alli's medical bills would be forwarded "for payment under PIP." The note goes on to state that the adjuster "explained the coverage available."

This evidence fails to prove that Geico disclosed the UIM coverage to the insureds at this time. That is because this note does not say whether the explained coverage included both PIP and UIM, or only PIP. Because this appears to be the PIP adjuster notes, and the note references payments under PIP while failing to mention UIM, this note does not prove that Geico disclosed the UIM coverage on this date.

Geico also points to its claim note that appears to have been made on April 20, 2012. This note appears to memorialize a telephone conversation that the PIP adjuster for Rebecca's policy had with an attorney. This attorney appears to have been investigating the possibility of filing a claim on Alli's behalf against the city of Seattle and its police department. The note states that this attorney advised the adjuster that "he [was] not formally rep[resent]ing the family at this time."[40] The note also states that the adjuster explained both the PIP and UIM coverage to the attorney.

---

[40] Clerk's Papers at 818.

But this note does nothing other than raising a genuine issue of material fact whether Geico disclosed to the insureds the existence of UIM benefits on this date, some eight months after the report of the accident. It is at odds with Chris's declaration that "Geico never told me that there were additional funds [other than PIP benefits] available under the policy."[41]

Moreover, to the extent that Geico relies on the argument that the attorney was then the insureds' agent and that disclosure to this agent constituted disclosure to the insureds, the argument is not dispositive. That is because the note states that this attorney explicitly stated that he was not formally representing the insureds.

Finally, Geico was required to disclose the available benefits under both policies. This claim note is only for Rebecca's policy. And the note states that the adjuster "d[i]dn't know what [coverage] [the] other pol[icy] had."[42]

In sum, these notes fail to establish the absence of a genuine issue of material fact that Geico disclosed both policies' UIM benefits to the insureds at this time. And they do nothing to answer the larger question whether Geico earlier disclosed UIM benefits for both polices to its insureds. Thus, there are genuine issues of material fact whether Geico complied with its duty under WAC 284-30-350.

---

[41] Id. at 206.

[42] Id. at 818.

13

For these reasons, we deny the insureds' request to direct entry of summary judgment in their favor on this issue. Resolution of the competing inferences from this record is a matter to be determined at trial.

The insureds next argue that that Geico also violated WAC 284-30-360(4) by failing to instruct them on what they needed to do to obtain the benefits of the policies. We conclude there is also a genuine issue of material fact for this claim.

WAC 284-30-360(4) provides:

> Upon receiving notification of a claim, every insurer must promptly provide necessary claim forms, instructions, and reasonable assistance so that first party claimants can comply with the policy conditions and the insurer's reasonable requirements.

Here, Geico knew that Alli was a minor, thus a settlement would require court approval. Yet this record puts at issue whether Geico ever informed the insureds of this process. Rebecca testified by declaration that "Geico never told [her] that [the insureds] would need to get court approval for any settlement and that [the insureds] would need to get that process started."[43] Chris also testified to the same understanding.

Geico disputes this point, relying on its claim notes, which indicate it discussed a settlement with Chris. But because the insureds contest this evidence with their own admissible evidence, there is a genuine issue of material fact on this point.

---

[43] Id. at 201.

The insureds also argue that Geico violated WAC 284-30-370 by waiting more than 30 days to investigate their claim. The trial court disagreed and so do we.

Here, the trial court determined that the insureds produced no evidence that Geico failed to properly investigate the claim. This was proper. The insureds point to nothing in the record that indicates Geico failed to properly investigate the claim. Rather, the record indicates that Geico knew the relevant facts, including the involvement of a driver and the scope of Alli's injuries. Thus, the insureds did not establish that Geico failed to investigate the claim within the period stated in the regulation.

The insureds argue that if Geico had investigated the claim, it would have promptly offered a settlement. But a claim that an insurer failed to make a good faith effort to settle a claim falls under WAC 284-30-330(6), not WAC 284-30-370. Here, the fact that Geico did not promptly offer a settlement does not establish that it failed to investigate the insureds' claim.

Finally, the insureds argue that Geico violated WAC 284-30-330(6) by failing to promptly offer a settlement. We decline to address this argument because they failed to properly raise this argument below and the trial court declined to consider it. Because the insureds fail to argue why this court should consider this unpreserved argument, we need not address it any further.

In sum, there are genuine issues of material fact for trial whether Geico violated two insurance regulations—WAC 284-30-350 and WAC 284-30-360(4).

15

Violations of these regulations would support the insureds' bad faith, IFCA, and CPA claims.

Geico argues that the insureds may not bring an IFCA claim based solely on violations of the insurance regulations. We note that amicus curiae Washington State Association of Justice Foundation properly states that the insureds do not directly address "whether unreasonable delay in handling their UIM claims is actionable under subsection (1) of RCW 48.30.015."[44] These statements of position are interrelated.

But our review of this record leads us to the conclusion that the trial court did not rule on this argument. Instead, the court appears to have assumed that the insureds could bring an IFCA claim and decided the case on the issue of damages. Similarly, this issue is not properly presented to us on appeal. For these reasons, we decline to address this argument any further at this time. The issue is more properly decided by the trial court, in the first instance.

## DAMAGES

The next question is whether the insureds established evidence of damages under any of their three claims. We conclude that they did.

Here, Geico ultimately paid the full amount of the policies' coverages after the insureds commenced this litigation. Thus, any damages must be based on other actions or omissions of Geico.

---

[44] Brief of Amicus Curiae Washington State Association for Justice Foundation at 10.

The trial court ruled that the insureds had failed to produce evidence that they were damaged for their bad faith, IFCA, and CPA claims.

These claims permit different types of damages. Under IFCA, plaintiffs may recover "actual damages."[45] Plaintiffs in a bad faith claim may recover "'general tort damages.'"[46] This includes emotional distress.[47]

Damages for a CPA violation are narrower. The CPA requires an injury to "business or property."[48] Thus, the CPA does not permit emotional distress damages.[49] But "the business and property injuries compensable under the CPA are relatively expansive."[50] And "[t]he injury element can be met even where the injury alleged is both minimal and temporary."[51] Additionally, "[a] loss of use of property" constitutes injury under the CPA.[52]

---

[45] RCW 48.30.015(1).

[46] St. Paul Fire & Marine Ins. Co. v. Onvia, Inc., 165 Wn.2d 122, 133, 196 P.3d 664 (2008) (quoting Coventry Associates v. Am. States Ins. Co., 136 Wn.2d 269, 285, 961 P.2d 933 (1998)).

[47] Anderson, 101 Wn. App at 333.

[48] RCW 19.86.090.

[49] Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 57, 204 P.3d 885 (2009).

[50] Frias v. Asset Foreclosure Servs., Inc., 181 Wn.2d 412, 431, 334 P.3d 529 (2014).

[51] Id.

[52] Mason v. Mortgage Am., Inc., 114 Wn.2d 842, 854, 792 P.2d 142 (1990).

The attorney fees incurred in bringing a CPA claim do not qualify as a compensable injury.[53] But the cost of investigating an unfair practice may qualify as an injury under appropriate circumstances.[54]

Anderson is also instructive on the issue of damages. There, Anderson alleged that delayed payment of benefits damaged her. This court rejected the insurer's argument that Anderson had failed to allege an injury. It stated:

> State Farm argues Anderson has not proved damage or injury to property because her recovery in the arbitration ultimately made her whole despite the 10-month delay before State Farm opened a UIM file. Anderson, however, alleges loss of the interest on the value of her eventual recovery over that 10-month period. She seeks recovery of the attorney fees and costs she expended in initiating the claim. She also claims to have experienced financial penalties attributable to the delay because she and her husband were short of funds to pay bills associated with the accident. Such evidence is sufficient to raise an issue of fact as to economic harm. Moreover, because bad faith is a tort, a plaintiff is not limited to economic damages. Anderson alleges that she and her husband suffered emotional distress due to the financial difficulties. On remand she is entitled to a trial to prove the amount of damages, both financial and emotional, caused by State Farm's bad faith failure to disclose a pertinent coverage and the resulting delay in obtaining coverage.[55]

Here, the insureds submitted sufficient evidence to establish that they were damaged for the purposes of all three of their claims.

---

[53] Panag, 166 Wn.2d at 62.

[54] Id. at 62-63.

[55] Anderson, 101 Wn. App at 333.

18

*Bad Faith & IFCA Damages*

Chris testified:

> If Geico had ever told me that they were offering the maximum amount available under the policies and needed my agreement to pay it, I would have immediately agreed to it. Had Geico told me that those funds could not be used for Alli's care until they had been approved by a court, I would have taken what[e]ver steps were necessary to get that approval process completed. Geico never explained to me how the claim process was supposed to work, what was available, or what I was supposed to do.[56]

He also testified that Alli needed "alternative therapies such as massage therapy and acupuncture" to manage her pain.[57] Alli's health insurance did not cover these therapies, thus the insureds had to use money from Geico to cover these treatments. And once the PIP funds were exhausted, the insureds could no longer pay for Alli's treatment. Rebecca also testified that ceasing these treatments, which "ease[d] [Alli's] pain and discomfort," caused Alli to suffer.[58]

This testimony sufficiently establishes that if Geico had explained the coverage and the claim process, the insureds would have quickly settled with Geico. And because of the delay in settling, the insureds could not afford all of Alli's treatments, causing her pain and suffering. This constitutes damages for the purpose of the bad faith claim.

These damages also constitute damages under IFCA. IFCA allows recovery of actual damages. Here, Geico does not dispute that these damages

---

[56] Clerk's Papers at 206.

[57] Id. at 206-07.

[58] Id. at 201-02.

constitute actual damages under IFCA. Instead, Geico argues only that the insureds failed to submit sufficient evidence of their damages for summary judgment purposes.

*CPA Damages*

The delay in receiving payment under the policies also constitutes injury under the CPA. Loss of use of property is an injury under the CPA.[59] Chris's testimony that the insureds would have used the funds for Alli's treatment but were unable to do so establishes that the insureds were deprived of the use of the settlement funds.

Additionally, part of the cost in hiring an attorney may also be injury under the CPA. Looking at this case in the light most favorable to the insureds, Geico failed to explain the terms of the policy or what the insureds had to do to settle the case. Thus, it was only after hiring an attorney that they learned the scope of their coverage. Their agreement with their attorney was for both investigation and prosecution of claims.

The trial court determined that this cost of investigation did not qualify as an injury because the insureds hired their attorney on a contingent fee agreement. We need not decide now whether this ruling was correct. But we note that if this was a question of recovering reasonable attorney fees, case authority holds that the fact that a client is not liable for fees does not preclude

---

[59] Mason, 114 Wn.2d at 854.

the award of fees against an adverse party.[60] Whether this undercuts the basis for the court's decision to deny the cost of investigation is a matter the trial court should consider on remand.

In sum, the insureds established, for summary judgment purposes, that they suffered damages under all three legal theories. Thus, the court erred when it granted Geico summary judgment based on a lack of evidence of damages. In reaching this conclusion, we express no opinion whether the insureds have additional damage claims that were not originally presented to the trial court in the motions that are currently under review.

## ATTORNEY FEES

The insureds argue that they are entitled to an award of attorney fees on appeal. We hold that such an award is premature because a prevailing party has not, as yet, been determined.

Both IFCA and the CPA provide for awards of attorney fees. But IFCA provides attorney fees to a first party claimant who is a "prevailing party."[61] And the CPA provides for attorney fees when the plaintiff recovers damages.[62] Here, there is not yet a determination that the insureds prevailed or that they are entitled to damages. Accordingly, a fee award is premature.

---

[60] See Blair v. Wash. State Univ., 108 Wn.2d 558, 570-71, 740 P.2d 1379 (1987).

[61] RCW 48.30.015(3).

[62] RCW 19.86.090.

21

We reverse the court's grant of summary judgment on the bad faith, CPA, and IFCA claims and remand for further proceedings. We deny, as premature, the insureds' request for reasonable attorney fees.

_Cox, J._

WE CONCUR: