NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUN 22 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LAURIE BRIDGHAM-MORRISON and DEREK MORRISON,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>NATIONAL GENERAL ASSURANCE COMPANY, a foreign insurer,<br><br>Defendant-Appellee. | No. 16-35479<br><br>D.C. No. 2:15-cv-00927-RAJ<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Submitted May 7, 2018**
Seattle, Washington

Before: GOULD and IKUTA, Circuit Judges, and FREUDENTHAL,*** District
Judge.

Laurie Bridgham-Morrison (Plaintiff) appeals the district court's grant of

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Nancy D. Freudenthal, United States District Judge for
the District of Wyoming, sitting by designation.

summary judgment in favor of National General Assurance Co. (NGAC) on her claims for insurance bad faith and for violations of the Washington Insurance Fair Conduct Act (IFCA). We review *de novo* and affirm the district court's grant of summary judgment.

After an automobile accident, NGAC paid Plaintiff the policy maximum under her personal injury protection (PIP) policy, and the motorist who struck Plaintiff's vehicle paid his insurance policy maximum. Plaintiff then sought to recover additional damages under her underinsured motorist (UIM) policy. In fall 2013, after offsetting for money already received under the PIP policy and from the motorist's insurer, NGAC offered Plaintiff an additional $20,000 to settle her claim. In total, the insurance payments covered Plaintiff's then-documented economic damages and gave an additional sum for non-economic damages based on internal NGAC estimates. Plaintiff rejected this offer and negotiations stalled and no settlement was reached.

Plaintiff hired a new attorney in late 2013, and between December 2013 and October 2014, Plaintiff's new attorney sent many letters demanding a payment higher than the $20,000 that NGAC had previously offered. Those letters gave little to no explanation for why a higher payment would be appropriate, and they did not document a justification for additional payments. In early 2014 an NGAC claims adjuster had some questions about causation and asked Plaintiff for

2

additional employment and medical documentation. Despite repeated requests, Plaintiff refused to turn over these documents until April 2015, on the eve of litigation. Eventually, but only after litigation started, NGAC tendered the policy maximum.

Under both the common law tort of insurance bad faith and the IFCA, the controlling question is whether the insurer acted unreasonably. *See Mut. of Enumclaw Ins. Co. v. Dan Paulson Constr., Inc.*, 161 Wash. 2d 903, 916 (2007); Wash. Rev. Code § 48.30.015. Plaintiff argues that NGAC's investigation was unreasonable because it did not include certain categories of economic and non-economic damages. Most of these claimed damages were never mentioned by Plaintiff before litigation, and they were not included in Plaintiff's initial demands. Plaintiff contends that NGAC had a duty to investigate these damages whether or not she ever claimed them. We reject this argument.

Here, NGAC granted coverage for all documented economic damages, and estimated non-economic damages based on the records Plaintiff provided. In early communications with NGAC, Plaintiff's counsel represented that Plaintiff had "largely recovered from her injuries" and "was able to get back to work" after her second shoulder surgery. In such circumstances, NGAC could reasonably have concluded that the information given before NGAC's settlement offer was all that was necessary to evaluate the claim. That NGAC may not have covered some

3

categories of damages does not make their investigation unreasonable, especially where, as here, Plaintiff was represented by counsel, those damages were never claimed by Plaintiff, and Plaintiff refused to turn over medical and employment documents requested by NGAC.

We see no basis in Washington law to require an insurer to discover additional damages that the insured never claimed or documented. Without some contrary guidance from the Washington courts, we decline to hold that Washington law imposes a duty on an insurer to intuit what a plaintiff's damages might be. The investigation here, which involved a police report, medical records, an earning loss statement from Plaintiff's employer, and a damage statement listing medical expenses and lost wages, is not meaningfully distinguishable from the investigation in *Anderson v. State Farm Mut. Ins. Co.*, 101 Wash. App. 323, 334 (2000). In *Anderson*, a Washington court of appeals affirmed a grant of summary judgment in favor of an insurer on a failure to investigate claim. *Id*. at 335. Plaintiff claims that the valuation of her non-economic damages was too low. But disagreement about the amount of damages based on available evidence cannot ground a claim for failure to investigate. *See id*. at 334.

Plaintiff also argues that NGAC's settlement offers were unreasonable because NGAC offered less than was ultimately recovered, and because NGAC forced Plaintiff into litigation to recover what she was owed under the policy. In

*Perez-Crisantos v. State Farm Fire & Cas. Co.*, the Washington Supreme Court held that a disparity between an offer and the amount ultimately recovered does not, on its own, give a basis for a claim of bad faith—the plaintiff must show something more. 187 Wash. 2d 669, 684 (2017).

Plaintiff has the burden of establishing that NGAC's offer was not "reasonable in light of evidence available at the time the offer was made." *Lloyd v. Allstate Ins. Co.*, 167 Wash. App. 490, 497 (2012); *see also, Smith v. Safeco Ins. Co.*, 150 Wash. 2d 478, 485-86 (2003) ("[T]he insured must come forward with evidence that the insurer acted unreasonably. The policyholder has the burden of proof."). Plaintiff presented no evidence that the settlement offer was unreasonably low based on the information NGAC had when it made the offer.

Plaintiff contends that NGAC had two different internal estimates of damages for her shoulder injury, and that NGAC's initial offer was based on the lower estimate. This, she claims, supports her contention that the offer was unreasonably low. But assessing non-economic damages is hardly scientific. *See Dayton v. Farmers Ins. Grp.*, 124 Wash. 2d 277, 280–81 (1994) (noting that in assessing personal injury damages, there is "no precise valuation formula with which to calculate awards" and that "[l]egitimate differences of opinion in the value of a claim negotiated in good faith do not deprive an insured of the benefit of coverage bargained for"). An internal disagreement within NGAC about the

5

amount of non-economic damages does not show that the second estimate on which the offer was based was unreasonable.

Plaintiff also argues that violations of Washington state insurance regulations are *per se* IFCA violations and *per se* good faith violations, and that there are material disputes of fact as to whether NGAC violated some of the regulations. The Washington Supreme Court has held that merely violating a regulation is not a *per se* violation of the IFCA. *See Perez-Crisantos*, 187 Wash. 2d 669 at 683–84. A court must still assess whether the insurer acted unreasonably. We hold that based on the record presented, no reasonable juror could conclude that NGAC acted unreasonably. For the same reason, we reject Plaintiff's argument that a violation of the Washington state insurance regulations constitutes a *per se* breach of the duty of good faith.

**AFFIRMED.**